(No. 11679.—Judgment affirmed.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* W. R. Turnbull, Appellee, *vs.* THE CHICAGO, PEORIA AND ST. LOUIS RAILROAD COMPANY *et al.* Appellants.

*Opinion filed December 19, 1917—Rehearing denied Feb. 7, 1918.*

1. PUBLIC UTILITIES—*what use of a railroad side-track will not convert it into a public team-track.* The fact that a railroad company permits a part of its side-track leading to a grain elevator to be used for loading and unloading cars with teams, with the consent of the owner of the elevator and when it does not interfere with his business, will not convert the side-track into an ordinary public team-track.

2. SAME—*when a railroad company cannot change rule as to a switching rate.* A long established rule of a railroad company fixing a switching rate for hauling grain from an elevator on its

side-track to the point of connection with another railroad cannot be changed by the railroad company, without the approval of the Public Utilities Commission, so as to exclude such service from the benefit of the switching rate and apply the distance tariff rate thereto, thereby practically excluding the shipper from markets on the connecting line.

3. SAME—*commission may find rate unreasonable from the facts proved.* The Public Utilities Commission may find a railroad rate to be unreasonable from the facts proved on the hearing, and it is not essential that any witness shall express an opinion that the rate is unreasonable or testify to the various details that make up the cost of operation.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

WILSON, WARREN & CHILD, for appellants.

EDWARD J. BRUNDAGE, Attorney General, GEORGE T. BUCKINGHAM, WILLIAM E. TRAUTMAN, ALBERT D. RODENBERG, BARBER & BARBER, and STEVENS & HERNDON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On September 21, 1916, W. R. Turnbull, owner and operator of an elevator located on a side-track of the Chicago, Peoria and St. Louis Railroad Company, filed a complaint with the Public Utilities Commission, alleging that the company established a new tariff rate exceeding the rate uniformly charged for the past ten years for the movement of cars from his elevator to the connection with the Chicago, Burlington and Quincy railroad, and that the rate was unreasonable and a discrimination against him. An answer was filed by the receivers denying every allegation of the complaint, and there was a hearing before the commission, resulting in a finding that the tariff was unreasonable and not justified, and that a reasonable rate would be ten cents per ton, with a minimum of $2 and a maximum of $4 per

car. It was therefore ordered that the respondents cease and desist from charging any higher rate. An appeal from the order was taken to the circuit court of Sangamon county, where it was approved and an appeal to this court was allowed.

Prior to the year 1900 a spur or stub side-track was laid in a public street in the city of Waverly from the railroad track now owned by the Chicago, Peoria and St. Louis Railroad Company to Turnbull's elevator, and the side-track has ever since been in operation, switching cars to and from the elevator. The Chicago, Burlington and Quincy railroad crosses the Chicago, Peoria and St. Louis railroad at Waverly, and the side-track affords a connection with the tracks of the Burlington, about two and a half blocks distant. Another elevator operated in competition with the business of Turnbull is located at Waverly, with connections with both railroads. The freight rates on grain from Waverly to Chicago are seven and a half cents per hundred weight on the Burlington and nine cents per hundred on the Chicago, Peoria and St. Louis railroad. The side-track to Turnbull's elevator is a short one, holding only a few cars, and during the last few years a portion of the track between the elevator and the main track has been used to some extent as a team track and is convenient for that purpose, being in a public street and nearer the city than the regular team track north of the railroad. For more than ten years before August 16, 1916, the railroad company switched cars from Turnbull's elevator to the Burlington tracks at a charge of ten cents per ton, with a minimum of $2 and a maximum of $4 per car, and this charge was absorbed by the Burlington. That rate was fixed by a rule of the railroad company which did not apply to traffic between connecting lines and public team tracks used for loading and unloading cars. On August 16, 1916, the following rule was adopted:

"The rate for switching loaded cars within the switching limits of any station on the Chicago, Peoria and

St. Louis railroad (see exceptions) will be ten (10) cents per ton of 2000 pounds, with minimum charge of $2 per car, maximum charge $4 per car. (See note.)

"Note.—This rate will not apply on traffic between connecting lines and public team tracks or industries located on tracks owned and maintained by the Chicago, Peoria and St. Louis railroad. Public team tracks and tracks at freight houses or in public delivery yards or serving private industries, when such tracks are owned and maintained by the Chicago, Peoria and St. Louis railroad at any station on the Chicago, Peoria and St. Louis railroad, used for loading or unloading cars, are exclusively for handling the traffic of the Chicago, Peoria and St. Louis railroad."

The difference between this rule and the former one was that the switching rate was not to apply to industries located on tracks owned and operated by the Chicago, Peoria and St. Louis Railroad Company, and the effect was that the regular distance tariff was applied to the movement of cars from the elevator to the Burlington. For that service the distance tariff was 2.6 per hundred weight for wheat and 2.2 per hundred weight for all other grain, amounting to $20.80 for wheat and $17.60 for other grain for hauling a car about a quarter of a mile. The Burlington refused to absorb this charge above the switching rate, and the effect was to exclude Turnbull from the Chicago market and the Burlington road.

It is contended by the appellants that the evidence did not justify a finding that the rate charged by the new rule was unreasonable; that the distance tariff applied because the side-track had become a team track for loading and unloading cars by teams, and that the ownership of the track determined the application of the tariff. It was not necessary that any witness should express an opinion that the rate fixed by the new rule was unreasonable or that anyone should testify to the various details making up the cost of operation, but the commission could determine from facts

282 — 11

proved whether the distance tariff applied to the situation was unreasonable or not. The primary use of the side-track and the purpose for which it was built was the service of the elevator, and the fact that the railroad company permitted the use of part of the track for loading and unloading cars with teams, which was ordinarily with the consent of Turnbull and when it did not interfere with his business, did not convert the track into an ordinary public team track. What relation the ownership of the track had to the nature of the business done upon it does not appear. If the nature of the business was of any importance upon any question, it would only be upon the question whether a switching charge might be greater. The change in the rule consisted merely in excepting from the switching rate, service on a side-track owned by the railroad company, and that afforded no reasonable excuse or justification for the change. The facts proved showed that the application of the distance tariff as against Turnbull's elevator was both unreasonable and discriminatory.

It is said that the fact of the appellants and their predecessors having charged a rate unreasonably low for a long term of years would not prevent them from making a reasonable charge, which is true as a matter of justice, but the statute does prevent doing that thing without the approval of the commission. Section 36 of the Public Utilities act provides: "No public utility shall increase any rate or other charge, or so alter any classification, contract, practice, rule or regulation as to result in any increase in any rate or other charge, under any circumstances whatsoever, except upon a showing before the commission and a finding by the commission that such increase is justified." The increased rate fixed by the rule of August 16, 1916, was an alteration of a rule and a practice of many years, and it was a violation of the statute prohibiting such change without a finding of the commission that the change was justified.

The judgment is affirmed.    *Judgment affirmed.*