50        APPELLATE COURTS OF ILLINOIS.

Michel et al. v. Illinois Bell Telephone Co., 226 Ill. App. 50.

## Victor P. Michel, Individually and as Mayor, and Joseph E. Daily, Appellees, v. Illinois Bell Telephone Company, Appellant.

### Gen. No. 7,057.

1. PUBLIC SERVICE—*operation of Illinois Commerce Act on pending proceedings.* Under Illinois Commerce Act of July 1, 1921, sec. 88 (Cahill's Ill. St. ch. 111a, ¶ 107), providing that any investigation, hearing or proceeding instituted prior to the taking effect of the act shall be continued and determined by the Commerce Commission with the same effect as if the act had not been passed, a proceeding to increase telephone rates, filed under the Public Utilities Act of 1913 prior to the taking effect of the Commerce Act, is controlled by the former act, there having been no final determination prior to the date when such act became effective, the proposed schedule of rates having been suspended after a partial hearing before the Utilities Commission.

2. PUBLIC SERVICE—*consent of commission requisite to increase in rates.* Under the Public Utilities Act of 1913, sec. 33, providing that rates shall not exceed those in effect July 1, 1913, and sec. 36, providing that no increase shall be made either directly or indirectly except after a showing before the commission and a finding by it justifying the increase, and the Public Service Act of 1921, sec. 33 (Cahill's Ill. St. ch. 111a, ¶ 48), providing that rates shall not exceed those in effect July 1, 1922, a schedule of increased telephone rates filed under the act of 1913, suspended from time to time by the commission and finally indefinitely suspended after the act of 1921 became effective, on a finding which in legal effect denied the increase on the ground that it was not justified, never became effective for want of consent, and could not be enforced.

3. PUBLIC SERVICE—*power of Public Utilities Commission to suspend rate increase.* Public Utilities Act of 1913, sec. 36, providing that rates not suspended by the commission shall go into effect thirty days after filing and empowering the commission to suspend a rate schedule for a period of 120 days after they would otherwise become effective and then for an additional period of six months, construed as a whole, empowers the suspension of schedules which do not operate as an increase, and it is only such schedule which becomes effective after thirty days where no suspension is made, and a schedule increasing rates does not become effective without favorable action by the commission.

4. PUBLIC SERVICE—*right of public utility to fix rates independently*

of *Public Utilities Commission.* The right of a public utility company to increase rates is dependent upon the provisions of the Public Utility Act of 1913, and is not inherent in the company, subject only to the reasonableness of the rate, and the failure of the Public Utilities Commission to find, within ten months after the filing of a schedule of increased rates, that such schedule is unreasonable does not justify the utility in attempting to put the increased schedule into effect.

5. PUBLIC SERVICE—*right of private individual to enjoin unauthorized increase in public utility rates.* The provisions of the Public Utilities Act of 1913, sec. 72, affording means of reparation where excessive rates are charged and section 36 authorizing the Public Utilities Commission to enjoin any unlawful or unauthorized act by a public utility, do not vest the right to enjoin an unauthorized increase in rates in the commission alone, but private individuals interested therein may prosecute an action to enjoin such unauthorized increase in rates.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Hon. T. N. GREEN and Hon. C. V. MILES, Judges, presiding. Heard in this court at the April term, 1922. Affirmed. Opinion filed August 5, 1922.

MILLER, ELLIOTT & WESTERVELT and CUTTING, MOORE & SIDLEY, for appellant; FRANK T. MILLER, PHILIP B. WARREN and WILLIAM D. BANGS, of counsel.

SHELTON F. McGRATH, for appellees.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellees, Victor P. Michel, individually and as mayor of the City of Peoria, and Joseph E. Daily, filed their bill in the circuit court of Peoria county, in which they sought to restrain by injunction the appellant, the Illinois Bell Telephone Company, a corporation, from putting into force and effect an increased schedule of rates for telephone service. A temporary injunction was issued. The appellant filed an answer and moved to dissolve the injunction, which motion was heard by the three judges of the circuit sitting *en banc,* and the motion to dissolve was denied. From that order an appeal was prosecuted.

Appellant operates a telephone exchange in the City of Peoria and vicinity. On April 1, 1920, it filed with the Public Utilities Commission a schedule of increased rates and published notice as provided by statute and the rules of the commission. The schedule stated the changes made in the schedule then in force and the time the new rates would go into effect. On April 19, 1920, the Public Utilities Commission suspended the schedule until August 29, 1920, and on July 29, 1920, again suspended it until February 26, 1921. On November 12, 1920, a hearing was had before the Public Utilities Commission and the appellant introduced evidence in support of the reasonableness of the schedule filed. At the conclusion of the evidence the hearing was continued to December 3, 1920, when further evidence was introduced by appellant. The hearing was continued from time to time after that date until February 17, 1921, when the cause was continued without fixing a date for any further hearing. On February 23, 1921, the Public Utilities Commission suspended the schedule until August 26, 1921. On July 28, 1921, the Illinois Commerce Commission, as the successor of the Public Utilities Commission, entered an order suspending the schedule until February 23, 1922. In this and previous orders the commission recited that no decision had been rendered in the matter. On October 31, 1921, the Illinois Commerce Commission entered an order purporting to permanently suspend, annul and cancel the schedule, in which order the commission found that the proposed rates were, from time to time, suspended, pending investigation, and that the investigation had not been completed, but that there had been a marked decline in prices of labor and materials and on that account it would be unfair to fix rates for the future. On October 26, 1921, appellant notified the Illinois Commerce Commission in writing that the effect of the decision by the circuit court of

Sangamon county, rendered in another case, was that the rate for the Peoria Exchange became the lawful rate on August 27, 1921; and that appellant would collect increased rates from that date.  On November 1, 1921, appellant served a written notice upon the City of Peoria, advising the city that it would put the new rates into effect on November 1, 1921, and would send a notice of that fact to the Peoria subscribers with the November telephone bills.  On the same date the appellees filed a bill and obtained a temporary injunction restraining appellant from sending out such notices, and from asking its subscribers to pay the rates provided in the new schedule, and from charging or collecting any rates in excess of those fixed by the Public Utilities Commission.  On November 18, 1921, appellant filed its sworn answer to the bill and made a motion to dissolve the temporary injunction, making the sworn answer an affidavit in support of the motion.

This is not a case in which the court was called upon to fix a rate, or to determine what was a reasonable rate.  The only purpose of the bill was to restrain, by injunction, an alleged unauthorized rate from being put into force and effect.  There is a dispute as to what law is applicable to the fixing of these rates.  Appellant claims that the case is governed by the Illinois Commerce Act of July 1, 1921, while appellees contend that the Public Utilities Act of 1913 is controlling.  The schedule was filed on April 1, 1920, under the act of 1913.  There had been no final determination on July 1, 1921, when the Illinois Commerce Act went into effect.  Section 88 of the Act of July 1, 1921 [Cahill's Ill. St. ch. 111a, ¶ 107], provides that any investigation, hearing or proceeding instituted or conducted by the Public Utilities Commission, prior to the taking effect of the act, shall be continued and conducted to a final determination by the Illinois Commerce Commission with the same ef-

fect as if the act had not been passed. If, as provided in section 88, proceedings conducted by the Public Utilities Commission prior to the taking effect of the act of 1921 were to be continued and conducted to a final determination by the Illinois Commerce Commission with the same effect as if the act of 1921 had not been passed, then it must necessarily follow that, if no act had been passed in 1921, the law in force prior to that date must govern and be controlling in this case, and we hold that is the meaning of the language used, and the Public Utilities Act of 1913 is controlling in this case. The entire argument of appellant is based upon the theory that the act of July 1, 1921, governs, and for that reason it will not be necessary for us to consider the sections of that act referred to by the appellant.

Section 33 of the Public Utilities Act of 1913 provides that the rates, and other charges and classifications, shall not, without the consent of the commission, exceed those in effect July 1, 1913. Section 36 provides that no public utility shall increase any rate, or other charge, or so alter any classification, contract, practice, rule or regulation so as to result in an increase in any rate, or other charge, under any circumstances whatever, except upon a showing before the commission, and a finding by the commission that such increase is justified. Section 33 of the Act of 1921 [Cahill's Ill. St. ch. 111a, ¶ 48], provides that the rates, other charges and classifications, shall not, without the consent of the commission, exceed those in effect July 1, 1921. In the case of *State Public Utilities Commission v. Chicago & W. T. Ry. Co.*, 275 Ill. 555, in construing section 36, it was held that the provision relative to a rate not going into effect until approved by the commission did not apply to changes made when the first schedule was filed; and that under the provision that no service could be rendered by a public utility until its schedule of rates

Second District—August, 1922. · 55

Michel et al. v. Illinois Bell Telephone Co., 226 Ill. App. 50.

was filed, it was contemplated that the schedule should be on file when the act went into effect, and the rates in force when the schedules were made could not be increased thereafter without the consent of the Public Utilities Commission. In *State Public Utilities Commission v. Chicago, P. & St. L. R. Co.*, 282 Ill. 158, it was held, that a proposed rate which involved an increase could not be legally effective except upon a finding by the commission that the increase was justified. The effect of sections 33 and 36 of the old Act, and section 33 of the new Act is to prohibit an increased rate from going into effect until there is a hearing as to the reasonableness of the rate and an order of the commission justifying the increased rate. There was no finding in this case that the increased rate was justified, but, on the contrary, there was, in effect, a finding that the increased rate was not justified and that it should not become effective. The new rate, therefore, never became effective, was not a legal rate, and appellant had no right to put it in force and effect.

Section 36 further provides that wherever there shall be filed with the commission any schedule, the commission shall have power, on complaint, or of its own initiative, to enter upon a hearing, and, pending the hearing, such rate shall not go into effect, provided the period of suspension shall not exceed more than 120 days beyond the time when such rate would otherwise go into effect, unless the commission extends the period of suspension another six months; and that all such rates, not so suspended, shall go into effect thirty days from the time of their being filed. This section is quite lengthy and contains provisions which counsel insist are uncertain in meaning, and are in conflict with each other. Some portions of this section have been construed while others have not been construed. It is a well-known rule of law that statutes should be construed so that no clause, sen-

tence or word shall be superfluous or void. Every sentence and word should be given its usual and ordinary meaning and the whole section or statute is to be construed together. *Ruda v. Industrial Board,* 283 Ill. 550; *Wells Bros. Co. v. Industrial Commission,* 285 Ill. 647; *Colton v. Board of Trustees of Firemen's Pension Fund of Bloomington,* 287 Ill. 56. When this rule is applied to section 36, considered as a whole, we think its provisions are not uncertain or in conflict. We think the provision with reference to the suspension of rates applies to rates which do not operate as an increase, and does not apply to rates which do operate as an increase. This seems to be the holding in *State Public Utilities Commission v. Chicago & W. T. Ry. Co., supra.* This is apparent when the provision with reference to the suspension of rates is read in connection with that part of the section which provides that no public utility shall increase any rate, under any circumstance whatsoever, except upon a showing before the commission and a finding by the commission that such increase is justified. If the provision that a schedule of rates shall go into effect in thirty days after the same is filed, unless suspended, applies to schedules which increase rates, then the provision that no increased rate shall go into effect without the consent of the commission is a nullity. Before an increased rate can go into effect there are two things requisite, there must be a hearing before the commission and an order of the commission justifying the increase. If the suspension provision is construed to apply to schedules which increase rates then the commission can suspend an increased rate for a period of ten months after the date an order is entered approving such increase. This certainly was not the intention of the legislature. We think the intention was to create two distinct classes of schedules, those which increase the rate and those which did not, and to apply a different rule to each

class. A schedule which does not increase the rates may be suspended for ten months under section 36, and if it is not suspended it goes into effect thirty days after the schedule is filed, while a schedule which increased the rates cannot go into effect until after there is a finding by the commission that such increase is justified. For these reasons the schedule of April 1, 1920, did not go into effect on March 1, 1921, or at any other date. It was not a legal rate for the reason that it was never approved by the Public Utilities Commission or by the Illinois Commerce Commission.

Appellant has cited many authorities in support of its contention that the power to make new rates continues in public utilities notwithstanding the provisions of the statute; that upon the filing of appellant's schedule, the commission had no jurisdiction except to approve the same as filed, or fix a reasonable rate in lieu thereof; that by failing, within ten months, to find that the appellant's rate was unreasonable, the new rate became effective and the appellant had a right to enforce it. Most of the cases cited are under the Interstate Commerce Law and depend upon the provisions of that act for the construction placed upon them. These authorities would be persuasive here if the two acts were alike. If both statutes provided that the utility had the right to fix its own rates, and when a schedule was filed with the commission the presumption was that the rate was reasonable until otherwise determined by the commission, then the cases cited by appellant might have some bearing on the question at issue before us. The question at issue here must be determined under the specific provisions of section 36. Under this section a utility does not have power to make a rate independent of the statute, and the failure of the commission, within ten months, to find that the rate was unreasonable did not justify the utility in putting the rate into force and effect.

Appellant insists that appellees cannot maintain this action for the reason that section 72 of the Statute [Cahill's Ill. St. ch. 111a, ¶ 91] provides means of reparation where excessive rates are charged; and section 75 [Cahill's Ill. St. ch. 111a, ¶ 94] provides that wherever any utility fails, or omits to do anything required of it by law, or by any order or decision of the commission, or is about to do anything contrary to or in violation of the law, or of any order or decision, the commission shall commence an action in the circuit court for the purpose of having such violation, or threatened violation, stopped and prevented, either by mandamus or injunction. It is insisted that because of these provisions the remedy provided is exclusive, and must be prosecuted by the commission, and that no action can be prosecuted by a private individual, and cases are cited under the Interstate Commerce Act in support of this position.

It has been held in *Farmers' Elevator Co. v. Chicago, R. I. & P. Ry. Co.,* 266 Ill. 567, that the Public Utilities Act is similar in many features to the Interstate Commerce Statute; and in *State Public Utilities Commission v. Terminal R. R. Ass'n,* 281 Ill. 181, it was held that the statute and practice before the Public Utilities Commission are substantially the same as that governing hearings before the Interstate Commerce Commission. This does not mean, however, that the two acts are to be construed alike, regardless of the language used. Each statute will be construed in the light of its specific provisions. If one statute confers exclusive jurisdiction on some particular court and the other statute does not confer such jurisdiction, both acts will not be construed alike, but each will be construed according to its provisions. There is no doubt but that the Public Utilities Commission and the Illinois Commerce Commission have authority to apply to the circuit court for the purpose of enforcing their rulings and preventing a violation of

the statute. The circuit court is a court of general jurisdiction, both at law and in equity. While the Public Utilities Commission might have made application to the circuit court to prevent this rate from being put in force and effect, and could likewise enforce all of its rulings, and prevent the law from being violated, that fact does not prevent private individuals from applying to the courts for redress, or deprive the circuit court of its general jurisdiction over cases of this kind. Where the interests of private parties are identical, such parties may file a bill, upon behalf of themselves and all other persons similarly situated, for an injunction, and a court of equity, in order to avoid a multiplicity of suits, and to the end that the controversy may be determined in one suit, may assume jurisdiction of the controversy. *City of Chicago v. Collins,* 175 Ill. 445; *Spiegler v. City of Chicago,* 216 Ill. 114. Not only did the appellees have the right to apply to a court of equity for relief against these illegal rates, but we think the appellant recognized the right of private individuals and corporations to apply to the courts for redress. Appellant filed a bill in the circuit court of Sangamon county against the Illinois Commerce Commission to prevent the commission, by injunction, from interfering with appellant in putting into effect rates, under circumstances almost identical with those here presented. That case is referred to by appellant in the brief, and it appears that the circuit court of Sangamon county overruled a demurrer to the bill filed by the appellant, and, upon appeal to the Appellate Court from the Third District, the decree was reversed and the cause remanded with directions to sustain the demurrer to the bill. The court held in that case, as we have held here, that the Public Utilities Act of 1913 governed, and that the rate was illegal because it was not approved by the Utilities Commission before appellant attempted to put it into

force and effect. *Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 227 Ill. App. —.

For the reasons indicated the motion to dissolve the temporary injunction was properly overruled and the decree will be affirmed.

*Decree affirmed.*