THE PEOPLE *ex rel.* Edmund L. Schweder *et al.* Appellants, *vs.* JAMES J. BRADY, Auditor of Public Accounts, Appellee.

*Opinion filed April 22, 1915—Rehearing denied June 11, 1915.*

1. CONSTITUTIONAL LAW—*statute giving Auditor right to withhold final certificate of organization of bank is not invalid.* The provision of section 5 of the Banking act authorizing the State Auditor to withhold the final certificate of organization of a bank when he is not satisfied as to the personal character and standing of the officers or directors or when he has reason to believe that the bank is organized for any purpose other than that contemplated by the act, is not unconstitutional upon the alleged ground that it confers judicial and legislative power upon the Auditor.

2. BANKS—*discretion of the Auditor to withhold final certificate is not arbitrary.* The provision of section 5 of the Banking act authorizing the State Auditor, under certain conditions, to withhold the final certificate of organization of a bank is not arbitrary in the sense that he may withhold such certificate regardless of whether the conditions specified exist, but he is fully authorized to withhold the certificate in the first instance if he has reason to believe that the conditions exist.

3. SAME—*when the Auditor is justified in withholding final certificate.* The State Auditor is justified in withholding the final certificate of the organization of a bank with a capital stock of $25,000 though a permit to organize the bank in a village of less than 5000 inhabitants has been issued, where the village, since the permit was issued, has been annexed to a city having a population of 50,000 or more, and it appears that there are already in the village more banks than the population and business interests of the village warrant, thus showing an attempted evasion of the statute requiring banks organized in cities of 50,000 or more inhabitants to have $200,000 of capital stock.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

EDWARD N. SHERBURNE, and AARON COHN, (RATHJE & WESEMANN, of counsel,) for appellants.

P. J. LUCEY, Attorney General, and THOS. E. DEMPCY, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

A petition was presented to the circuit court of Sangamon county praying for a writ of *mandamus* requiring the Auditor of Public Accounts of the State to issue a certificate to the petitioners authorizing them to commence the business of banking, under the name of "The Bermond State Bank." The Auditor answered, the cause was heard on a stipulation of facts, the court dismissed the petition and the petitioners appealed.

On April 4, 1914, the appellants applied to the appellee for a permit to organize a bank under the name of "The Bermond State Bank," having a capital stock of $25,000, to do business in the village of Morgan Park, a village of Cook county having less than 5000 population. A permit was issued on April 15, and on April 21, the organization having been completed in compliance with the requirements of sections 3 and 4 of the Banking act, the Auditor, by a competent person appointed for that purpose, made a thorough examination of the affairs of the association and found that all the requirements of the statute had been complied with, but although all legal fees and expenses were paid to him he refused to issue the certificate required by section 5 to authorize the commencing of business. The reason for such refusal is found in the following facts which appear from the pleadings and stipulation:

At the time the permit to organize a bank was issued Morgan Park was a village of about 3700 population, organized under the general laws of the State. It was a suburban residence district adjacent to the city of Chicago, with but few industrial or commercial enterprises and small demand for banking facilities compared with other organized villages of like population more remotely situated from a large city and having more industrial or commercial enterprises, yet it had seven banks fully organized and doing business in the village and a permit had been issued for the organization of the eighth when the appli-

268 – 13

cation for the permit for the organization of the Bermond
State Bank was made, such permit being the ninth for the
organization of a State bank in Morgan Park. Within a
few years past a proposition to annex Morgan Park to the
city of Chicago had been submitted to the people and voted
on three times, and in 1911 had carried in both the city and
the village but the annexation had been defeated by pro-
ceedings in court. In April, 1914, the proposition to an-
nex the village of Morgan Park to the city of Chicago
was again submitted to the voters and carried in the city
of Chicago on April 7 and in the village of Morgan Park
on April 21. Prior to the commencement of this suit the
village of Morgan Park as a municipality had ceased to
exist and jurisdiction over the property and territory of
that municipality had become vested in the city of Chicago.
When the permit was issued to the appellants on April 15,
1914, the appellee informed the appellants that while it
might be his duty, under the statute, to issue the permit,
yet in view of the fact that the proposition for annexation
had carried once and would probably carry again, as it had
already carried at the election in the city on April 7 and
was to be voted on in the village on April 21, and in view
of the fact that there were enough banks already organized
and doing business in Morgan Park, it would be useless for
the appellants to proceed with the organization of the bank,
as the appellee would regard it as his duty to refuse to is-
sue a final certificate authorizing the bank to complete its
organization and commence business, and the appellee did
refuse to issue such final certificate for the reasons stated.

The appellants had complied with all the requirements
of the Banking act to entitle them to the Auditor's cer-
tificate. Section 5 of the Banking act, however, contains
this provision: "The Auditor may, in his discretion, with-
hold the issuing of the said certificate, authorizing the com-
mencement of business when he is not satisfied as to the
personal character and standing of the officers or directors

elected or appointed, in accordance with sections 3 and 4 of this act; or when he has reason to believe that the bank is organized for any purpose other than that contemplated by this act." Section 11 provides that the minimum capital stock with which banks may be organized is $25,000 in cities, towns and villages of not exceeding 5000 inhabitants. In cities, towns and villages of 50,000 inhabitants or more the minimum capital stock is $200,000. Chicago has a population exceeding two millions. It requires no argument to demonstrate that the purpose of the appellants was not to carry on a $25,000 bank in competition with the eight other similar corporations which had preceded it in this little village of less than 4000 inhabitants, having, by reason of its situation and the character of its residents, even less business and less demand for banking facilities than the ordinary village of the same size. The statute contemplates that stockholders in any bank incorporated in cities of over 50,000 population shall have at least $200,-000 of their own money invested in the business. This was a palpable attempt to establish a bank in a city of over 50,000 population with an investment of only $25,000 by the stockholders. It was a manifest evasion of the statute. Counsel do not argue this phase further than to say that the sworn application for a permit expressly states that the appellants desire to organize a bank in Morgan Park, and that the oath taken by each of the appellants states that he will not knowingly violate or willingly permit to be violated any of the provisions of the act under which the said association is organized.

Counsel take the position that by complying with the statute on April 21, 1914, appellants became entitled to a final certificate from the Auditor on that day, and that his duty to issue it is purely ministerial and may be enforced by *mandamus*. The provision of the act giving the Auditor discretion to withhold the certificate when he has reason to believe that the bank is organized for any purpose

other than that contemplated by the act, they argue, is unconstitutional, because it confers upon the Auditor judicial and legislative power. It is said that the Auditor may arbitrarily refuse to issue the final certificate, giving no reason for his refusal and no opportunity to the parties to be heard. The statute prescribes the manner in which banking associations may become incorporated, and provides for ascertaining, before such incorporation shall become complete, whether the required conditions have been complied with. The Auditor of Public Accounts is the officer upon whom the General Assembly has imposed this duty, and he necessarily exercises judgment in determining whether or not the law has been complied with, but his action in granting or refusing the certificate is not the exercise of judicial power, as that term is understood in referring to the distribution of the powers of government by the constitution. This is necessarily conceded by the appellants, for they are seeking to compel the issuance of the license as a ministerial act by means of a writ of *mandamus.* The power conferred on the Auditor is not different in character from that exercised by superintendents of schools in granting certificates to teachers, by city councils in granting licenses to keep dram-shops, or by the State Board of Health in granting licenses to practice medicine. In none of these cases does the officer or body engaged in the execution of the law exercise judicial power within the meaning of the constitution. "The power exercised is ministerial, only, although, as an incident to its exercise, the board is required to do a judicial act, or, rather, an act which is in its nature judicial. No law is construed or applied by the board and no legal rights are submitted to and adjudicated by it, without which, we have seen, judicial power is not exercised." *Owners of Lands* v. *People,* 113 Ill. 296; *People* v. *Apfelbaum,* 251 id. 18.

It is argued that the language quoted from section 5 confers upon the Auditor power arbitrarily to refuse to

issue the final certificate, as it is said he did in this case, and that he is under no obligation to give a reason for such refusal or an opportunity for a hearing. It is true that arbitrary power, to be exercised according to the whim or caprice of public officers, is inconsistent with our form of government, and any law which vests the enforcement or non-enforcement of the law in the particular case in the discretion of a public officer, unregulated by any rules or conditions, is arbitrary and invalid. (*Sheldon* v. *Hoyne,* 261 Ill. 222.) The discretion vested in the Auditor by the language quoted is not, however, such arbitrary power. He is authorized to withhold the certificate only in case he is not satisfied as to the personal ·character and standing of the officers or directors elected or appointed or when he has reason to believe that the bank is organized for a purpose other than that contemplated by the act. He may not arbitrarily withhold the certificate, alleging such a reason where it does not, in fact, exist. Such a withholding would be an act of the will, only, and not of the judgment, and would be such a palpable abuse of discretion as could be controlled by *mandamus.*

Counsel for the appellants insist that nothing in the stipulation of facts tends in the slightest degree to establish the contention that the appellants were seeking to establish a bank in the city of Chicago with a capital stock of $25,000. There was every reason to suppose, when the application was made for permission to organize the Bermond State Bank, that within a few days the village of Morgan Park would become a part of the city of Chicago. There already existed in Morgan Park at least half a dozen superfluous banks if they were to be limited to that municipality. There was no opening for another bank there. As soon as annexation took place, if it did take place, these banks, being in existence and in Chicago, might perhaps attempt to change their locations to other parts of the city. These facts seem to us sufficient to justify the inference

that the appellants' purpose in organizing the bank was not to conduct a banking business in a city not exceeding 5000 inhabitants but in one of 50,000 or more. The latter purpose was not contemplated by the statute where the capital stock of the bank was only $25,000, and the Auditor was therefore justified in refusing to issue the certificate.

*Judgment affirmed.*