TOWN OF WEST NEW YORK ET AL., PROSECUTORS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, AND PUBLIC SERVICE CO-ORDINATED TRANSPORT, A COR- PORATION, DEFENDANTS.

TOWNSHIP OF WEEHAWKEN ET AL., PROSECUTORS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, AND PUBLIC SERVICE CO-ORDINATED TRANSPORT, A COR- PORATION, DEFENDANTS.

Argued January 23, 1930—Decided February 4, 1930.

Before Justices PARKER, BLACK and BODINE.

For the prosecutors in No. 230, *J. Emil Walscheid*.

For the prosecutors in No. 242, *William C. Asper*.

For the board of public utility commissioners, *John O. Bigelow*.

For Public Service Co-ordinated Transport, *William H. Speer*.

PER CURIAM.

The attack is upon a change of fares posted by Public Service Co-ordinated Transport pursuant to the power to

increase rates in the first instance, recognized by paragraph (h) of section 17 of the Public Utility act of 1911 (*Pamph. L., p.* 378), as amended by *Pamph. L.* 1921, *p.* 165. The previous rate was a straight fare of five cents. The new rate, filed with the board, effective January 1st, 1930, reads: "Ten tokens for fifty cents, each token to be good where a five cents is now charged, or ten cents cash fare where a five cent fare is now charged."

Stated in another way, the casual rider paying in cash will be charged ten cents instead of five, as formerly; the rider buying tokens rides for five cents as formerly, except that like the purchase of a ten-trip ticket on a railroad, he pays for ten rides at the outset.

The new rate was filed on December 9th, 1929. On December 14th Mr. Justice Kalisch made a rule to show cause in each case, returnable before himself on the 21st, why a writ of *certiorari* should not be allowed to review, in one case, the "action" of the board in acceding to the increase; in the other, to review "a certain order in the form of a letter" permitting the increase. On the argument of these rules on December 21st, he continued them to the regular term of this court, January 21st, 1930. No stay had been ordered, and therefore the new rate went into effect on January 1st, 1930, and had been in operation for three weeks when the cases came on for argument.

It is, to say the least, doubtful whether the board has made any order that this court can properly lay hold of by a writ of *certiorari*. As we read the documents, no "order" has been made. The utility presented a petition, somewhat voluminous, the main point of which was the claim that it was, and long had been, losing money steadily at the flat five-cent rate; that some relief was essential, and proposing by way of experiment for a reasonable period to raise the single fare to ten cents but sell twenty tokens for a dollar. The board replied expressing its willingness to hold its hand for an experimental period provided the utility modify the proposed new rate to the extent of selling ten tokens for fifty cents instead of requiring the purchase of twenty in order to

obtain what may be called the commutation rate. To this the utility acceded, and the rate was filed accordingly.

The stress of the argument for the prosecutors seems to be on the point that there was no "hearing." But under the act, none is required in the present status of affairs. Of course it is true that under section 16 the board may fix rates, after hearing, by order, upon notice; and as is well known, that is often done. But on the other hand, the utility may in the first instance fix its own rates. If required to file them, it must do so, section 16 (d); and, as tersely and accurately stated in the brief for one of the prosecutors, "the board may either (a) suspend the operation of the rates for not more than three months, and investigate (b) the board may remain quiescent and do nothing about it. If the latter course is pursued, the change of rates goes into effect automatically." To which may be added (c) the board may investigate without suspending.

The second situation, as we view the matter, exists in this case. A new rate is posted, and the board "remains quiescent and does nothing about it" at this time. That is its indubitable right under the statute.

The fact that there were some preliminaries savoring of negotiation, puts no different face on the situation. This precise method was pursued, and approved, in *O'Brien* v. *Board*, 92 *N. J. L.* 44 (at *p.* 47); *affirmed,* 587. Moreover, the present status is altogether experimental and probably temporary. Any municipality, or any citizen, has the right to complain and ask for a hearing; the board itself may intervene at any time and order a hearing with or within *ad interim* suspension of the rate. But at the present stage it seems to have done nothing amenable to a writ of *certiorari;* certainly in our own view, nothing to call for allowance of such a writ.

Prosecutor township of Weehawken, after the argument, filed what is entitled a "reply brief" in which for the first time apparently it is suggested that *Pamph. L.* 1928, *p.* 112, a supplement to the Utilities act, is unconstitutional because its object is not expressed in its title, and for perhaps other

reasons. We are unable to perceive that the validity of the 1928 act has any relevancy to the question whether the in-action of the board touching a posted increase in rates of a bus line requires our intervention at this time by *certiorari*.

The rule to show cause will be discharged, with costs.