Samuel Colton, Plaintiff-Appellant, v. Commonwealth Edison Company, Walter T. Fisher et al., Defendants-Appellees.

Gen. No. 45,870.

Opinion filed March 9, 1953. Rehearing denied April 6, 1953. Released for publication April 6, 1953.

HARRY R. BOOTH, JOSEPH KEIG, and MENDELSON & PAVIA, all of Chicago, for appellant.

ISHAM, LINCOLN & BEALE, of Chicago, for certain appellee; DAVID F. TABER, CHARLES D. ALBRIGHT, and JAMES P. DILLIE, all of Chicago, of counsel.

IVAN A. ELLIOTT, Attorney General of State of Illinois, of Chicago, for certain other appellees; MILTON MALLIN, Assistant Attorney General, WILBUR S. LEGG, and HAROLD BOWMAN, all of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff took a direct appeal to the Supreme Court of Illinois from an order of the circuit court of Cook county dismissing his complaint in chancery, filed on his own behalf and others alleged to be similarly situated, wherein he sought injunctive relief against the individual members of the Illinois Commerce Commission and the Commonwealth Edison Company by rea-

son of the cancellation of a rate schedule under which he and other users had been deprived of their constitutional rights, as he alleged, in that the cancellation of the order was entered without a hearing, without due notice, without findings, and without according plaintiff or other users their rights of due process under the State and Federal Constitutions.

After the cause was docketed in the Supreme Court, the attorney general, on behalf of the commission, moved that the cause be transferred to the Appellate Court for the following reasons: (1) that the case does not involve an attack on the validity of any statute; (2) that although plaintiff has attacked the construction placed on the Public Utilities Act (Ill. Rev. Stat. 1951, ch. 111⅔ [Jones Ill. Stats. Ann. 112.016–112.127]) by the commission, he has not raised any issue involving the construction of the constitution; (3) that the chancellor did not rule upon any constitutional questions; and (4) that no ruling on a constitutional question was preserved in the record for review. In support of that motion the individual defendants presented suggestions and authorities. The motion was allowed by the Supreme Court, and the case was transferred here for decision, without an opinion.

It appears that on May 10, 1950 the company filed with the commission a revision of Rate 67 (A9) under which plaintiff was then receiving service. The revised rate made no change in the charge for service. By its terms it was to become effective on June 9, 1950 and was to continue in effect until January 1, 1951, on which date it was to be deemed canceled and of no further effect. Pursuant to the provisions of the Public Utilities Act and the rules of the commission, notice of such filing was published, on May 19 and 26, 1950, in a newspaper of general circulation. Plaintiff had actual notice of such filing and of the terms of revision of Rate 67 (A9). In compliance with the provisions of

section 36 of the Utilities Act [Ill. Rev. Stats. 1951, ch. 111⅔, par. 36; Jones Ill. Stats. Ann. 112.055] the commission allowed the rate revision to become effective, without suspension and without a hearing, on the expiration of thirty days from the time of filing, that is, on June 9, 1950. The commission issued no order whatever in the matter but merely made an entry in its minutes showing that it was taking no action with respect to the rate as filed on May 10, 1950. Plaintiff waited until Friday, December 29, 1950, two days before revised Rate 67 (A9) became canceled, to file his complaint with the commission, but instead of proceeding therewith, he abandoned it, and on February 1, 1951 instituted suit in the circuit court.

For an understanding of the issues involved, it should be stated that in 1946 the company began a program of simplifying its rate structure. On May 10, 1950, in keeping with this program, it filed with the commission proposed rate schedules canceling five special classes of service for commercial users of electrical energy, thereby making all consumers under these schedules subject to two existing general rates designated as Rates 5 and 6, and reducing these two existing general rates. The schedules filed on May 10, 1950 affected the rates and charges to approximately 117,000 customers of the company. Included in the classes of service canceled by the proposed rate schedules was Rate 67 (A9) which affected 485 customers of the company, including plaintiff. Accompanying the proposed schedule was a statement by a vice president of the company explaining the purpose of the rate changes and their effect on the rates of its customers and the revenues of the company. From this statement it appeared that Rate 67 (A9) was an experimental rate introduced to promote electrical cooking by small commercial customers. Rate 67 (A9) required that at least 25 per cent of the users' con-

nected load be in cooking or heating equipment. Periodic load checks by the company were required to police the use of the rate. These checks proved to be expensive and impractical to administer; and as only 485 customers used that rate, the promotional aspects were shown to have been unsuccessful, both as to the customers and the company.

██ The company was required by statute to give notice of the proposed changes by publication in a newspaper of general circulation and was required by the commission to give all users under Rate 67 (A9) individual notice of the proposed changes. No formal complaints were made to the commission against the contemplated changes. The minutes of the commission show that on May 16, 1950 the schedules were submitted to the commission and that no action was taken on them. Accordingly, under the provisions of section 36 of the Utilities Act, the proposed schedules became effective thirty days from the date of filing, that is, on June 9, 1950. However, the schedule by its express terms provided that Rate 67 (A9) should not be eliminated until January 1, 1951, approximately six months after the effective date.

In his petition of December 29, 1950 before the commission plaintiff alleged that no notice of the freezing and cancellation of Rate 67 (A9) had been published in any newspaper of general circulation and that the elimination of Rate 67 (A9) was "arbitrary, illegal and void," and he prayed that the commission immediately rescind the authorization previously granted to the company to cancel and eliminate Rate 67 (A9). A hearing on plaintiff's petition was set for January 17, 1951, at which time plaintiff appeared and stated that he did not wish a hearing, and he moved instead for a summary order on his petition, whereupon the company requested oral argument before a ruling was made on plaintiff's motion. On February 1, 1951 plain-

tiff filed his original complaint in the circuit court of Cook county, on February 2, 1951 he advised the commission by registered mail that he was withdrawing his petition, and on February 13, 1951 he filed an amendment to his complaint so alleging. In his complaint he prayed that the company be enjoined from collecting rates higher than those provided under Rate 67 (A9) from plaintiff and other customers who were served under that rate prior to January 1, 1951; that the members of the commission be enjoined "from requiring the company to serve plaintiff rates higher than those provided for by the Schedule 67 (A9)"; and that the commission minute entry of May 10, 1950 be declared null and void.

The individual members of the commission filed a verified answer to the complaint, wherein they set forth the following defenses to the jurisdiction of the court over the subject matter of the complaint: (1) that plaintiff had failed to exhaust his administrative remedies and, therefore, could not invoke the jurisdiction of a court of equity; (2) that plaintiff's allegations of defective procedure adopted by the commission constituted a collateral attack on commission action; (3) that the relief prayed by plaintiff constituted the fixing of public utility rates, a matter outside the jurisdiction of the court; and (4) that where the commission, in the exercise of administrative discretion expressly granted by statute, did not suspend new rate schedules, the court had no power to do so.

The company filed a motion to dismiss the suit, supported by affidavit. On the basis of the pleadings and extensive arguments of counsel for all the parties, the chancellor found that plaintiff had an adequate remedy at law under the Utilities Act and that the complaint failed to state a cause of action over which the court had jurisdiction, and he dismissed the com-

plaint for want of jurisdiction. This appeal by plaintiff followed.

■ ₀ Pending the appeal in this court, the company on June 13, 1952 filed a motion to dismiss the appeal or, in the alternative, to affirm the decree; the motion was reserved to hearing. In that motion it called attention to the fact that when the appeal was called for oral argument before the Supreme Court on May 20, 1952, the court directed that the argument be confined to the motion to transfer the cause, and at the conclusion thereof entered its order allowing the motion. Plaintiff's principal contention in the Supreme Court was that his constitutional rights had been violated. In transferring the appeal to this court the Supreme Court resolved the constitutional issues adversely to plaintiff. Under the circumstances, we feel called upon to consider and decide only the jurisdictional question upon which the circuit court based its order of dismissal. *Hillmer v. Clarke* (Abst.), 316 Ill. App. 445; *McNeil v. Allen,* 205 Ill. App. 199.

■ The circuit court had dismissed the suit for want of jurisdiction, evidently in consonance with the general rule that a court of equity will not take jurisdiction of a cause if plaintiff has an adequate remedy at law; and if the legal remedy consists in part of proceedings before an administrative agency, courts of equity have an added reason for declining jurisdiction. The cases so holding point out that administrative agencies are created by the legislature to perform specific functions, and in order to afford an agency adequate opportunity to discharge its responsibilities, courts refuse to entertain complaints involving the subject matter of the duties of the agency until the complainant has exhausted all remedies before the agency. *Texas & Pacific Railway Co. v. Abilene Cotton Oil Co.,* 204 U. S. 426; *McCollum v. Southern Bell Telephone & Telegraph Co.,* 163 Tenn. 277, 43 S. W. (2d) 390. Plain-

497

tiff here sought to invoke equitable jurisdiction before exhausting either his remedy before the commission, an administrative agency, or his legal remedy in a court of review. It has also been held that the Utilities Act superseded all common-law remedies so far as rates are concerned; that the statutory remedies afforded consumers under the Act are exclusive; that under the Act the initiation of a rate is an attribute of management by a utility subject to the power of the commission to change a rate if it finds it not just and reasonable; that the rate filed by a utility in accordance with the procedure prescribed by the Act is presumed to be lawful and must be complained of in the first instance before the commission; and that the courts do not have jurisdiction to fix rates. The decision whether or not to suspend the new rates filed by the company in this case was clearly within the administrative discretion of the commission, and if it saw fit, in its discretion, not to suspend the new rates, the circuit court had no jurisdiction to substitute its judgment for that of the commission. *Algoma Coal & Coke Co. v. United States,* 11 F. Supp. 487; *Town of West New York v. Board of Public Utility Commissioners* (New Jersey), 8 N. J. Misc. 93, 148 Atl. 603; *Harrison Electric Co. v. Citizens' Ice & Storage Co.,* 149 Ark. 502, 232 S. W. 932; *McCollum v. Southern Bell Telephone & Telegraph Co., supra.*

 The Utilities Act provides a method of review of commission action, and in seeking such review statutory procedure must be followed (*Alton Railroad Co. v. Commerce Commission,* 407 Ill. 202; *People v. Biggs,* 402 Ill. 401); and where the commission had jurisdiction over the parties and the subject matter, as it did in the instant case, alleged defects in commission procedure such as the lack of proper hearing cannot be attacked collaterally but must be attacked on direct review in manner provided by the Act (*Illini*

498

*Coach Co. v. Commerce Commission,* 408 Ill. 104; *Chicago North Shore and Milwaukee Railroad Co. v. City of Chicago,* 331 Ill. 360). The Act clearly indicates the legislative intent that the commission be given the opportunity to consider and correct its actions and decisions before they can be attacked in the courts. *Alton Railroad Co. v. Commerce Commission, supra; City of Granite City v. Commerce Commission,* 407 Ill. 245. The foregoing cases involved orders entered by the commission from which statutory appeals clearly lay to the courts. Plaintiff in the instant case had the right to invoke the reconsideration of the commission's decision by filing a complaint with the commission, and if he felt dissatisfied with the order disposing of his complaint, he had the further right to take a statutory appeal therefrom. In fact, he had a period of six to seven months in which to file a complaint before he was actually affected by change in rates. Plaintiff evidently recognized the remedies available to him because he filed a complaint before the commission on December 29, 1950, only two days before the expiration of the period, and demanded that the commission enter a summary order canceling the company's schedules that eliminated Rate 67 (A9). The commission promptly set his complaint for hearing, but he abandoned his administrative remedy and sought, rather, injunctive relief in the circuit court. In the circumstances the chancellor was right in dismissing the complaint for lack of jurisdiction; to have taken jurisdiction would be tantamount to usurpation by the court of the functions of the commission. Plaintiff takes the position and cites cases holding that where a constitutional right has been violated, a party may seek the intervention of a court of equity, but since the constitutional aspects of the case were decided adversely to plaintiff by the Supreme Court by reason of its transfer of the case, the decisions relied upon do not apply.

 Because of our holding with respect to the jurisdictional phase of the case, other points urged such as the right of a single customer receiving service under the rate here involved to bring a class suit need not be considered.

The decree of the circuit court should accordingly be affirmed, and it is so ordered.

*Decree affirmed.*

NIEMEYER, J. and BURKE, J., concur.