Cities of Wheaton, Batavia, Elmhurst, St. Charles and Geneva; and the Villages of Bellwood, Glen Ellyn, Lombard and Maywood, all Municipal Corporations of the State of Illinois; and the County of Du Page; and West Suburban Transportation Council, an Unincorporated Association, Plaintiffs-Appellees, v. Chicago, Aurora and Elgin Railway Company, Defendant-Appellant.

Gen. No. 46,379.

Opinion filed June 9, 1954. Rehearing denied July 2, 1954. Released for publication July 2, 1954.

FRIEDMAN, ZOLINE & ROSENFIELD, of Chicago, for appellant; JOSEPH T. ZOLINE, and JACK H. OPENHEIM, both of Chicago, of counsel.

TENNEY, SHERMAN, BENTLEY & GUTHRIE, of Chicago, for appellees; S. ASHLEY GUTHRIE, and FRANCIS D. FISHER, both of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an appeal by defendant Company from an interlocutory order granting plaintiffs a temporary injunction restraining the Company from distributing proceeds of a condemnation award and of a sale of equipment.

Defendant operates an electric railroad between Forest Park, Illinois and the plaintiff cities and vil-

lages to the West. Until about September 15, 1953 its services extended to the Chicago Loop. About 90% of its service was transportation of passengers between Chicago and the cities and villages mentioned, and others farther west. From its Wells Street terminal in Chicago it operated over the elevated and surface tracks of the Chicago Transit Authority, and its predecessors, to Laramie Avenue. West of Laramie to its western terminal, defendant operated over its own right of way.

Plaintiffs are an unincorporated Association and the cities, villages and unincorporated communities in Du Page county, served by the Company.

Early in January 1954 the Company was awarded more than two million dollars for property taken by the City of Chicago, Cook county and the State of Illinois in aid of the Congress Street Highway development. In addition, the Company sold one million dollars of its fixed transportation facilities to the Chicago Transit Authority, also in aid of the development. January 15, 1954 the Company directors called a stockholders' meeting for February 16th to consider distributing the moneys in accordance with a previous resolution.

On February 2, 1954 plaintiffs filed a petition before the Illinois Commerce Commission seeking, among other things, (a) to stay any distribution of the proceeds; and (b) immediate initiation by the Commission of an injunction proceeding to restrain the Company from distributing the proceeds in violation of § 27a of the Public Utilities Act. (Ch. 111⅔, par. 27a, Ill. Rev. Stats. (1953) [Jones Ill. Stats. Ann. 112.046]). The Commission set a hearing on the petition for March 9, 1954.

On February 8th plaintiffs filed this action to maintain the status quo until the Commission made its decision on the petition. The next day it moved for

32

the injunction. The Company filed a verified answer and moved to strike the motion for temporary injunction. On these pleadings and without evidence, the order appealed from was entered, restraining distribution until the further order of the court.

The C. T. A. right of way lies generally along the Congress Street Highway route. After the right of way was taken in condemnation, the elevated structure thereon was taken down between Racine Avenue and Sacramento Boulevard. Thereafter the rail traffic between those points was rerouted over the surface of Van Buren Street. Subsequently, for reasons arising from the rerouting, the Commission on July 29, 1953 "temporarily authorized" defendant to suspend its operations between the Chicago terminal and Des Plaines Avenue, Forest Park, Illinois. Plaintiffs appealed from that order and the appeal is pending in the circuit court of Du Page county.

Plaintiffs allege their dependency upon defendant's transportation service; the adverse affect of discontinuance or impairment of service upon them; the temporary nature of the Commission order suspending service; the availability for resumption of Company service to Chicago, in the Highway development; and the public interest in the Company's financial potential to resume service should it be ordered to do so. They allege on information and belief the probable cost of resuming service and the present strained financial condition of the Company. They allege that the proceeds, subject of suit, are the only capital available to prepare to resume service and that, if distributed, defendant will be unable to comply with a resumption order should one be entered; the threatened violation of § 27a; and that, unless the distribution is enjoined, they will be irreparably damaged. The grounds alleged in the petition before the Commission and in the complaint are substantially the same.

33

Defendant's pleadings attacked the jurisdiction of the court, the substance of the complaint and the authority of the affiant in the verification and of plaintiffs' attorneys. The issues raised here are based on those points. The principal question is whether the chancellor entered an order beyond the jurisdiction of a court of equity and thereby abused his discretion.

The injunction rests on the theory that the Commission's delay in exercising its power to stop the dividend gave rise to the chancellor's power to preserve the status quo until that power was exercised, lest the alleged violation of § 27a render defendant incapable of rendering future service which is likely to be demanded of it. Defendant contends that the Commission's power is exclusive under the circumstances of this case.

Plaintiffs' petition before the Commission was filed under § 64 of the Public Utilities Act (ch. 111⅔, par. 68, Ill. Rev. Stats. (1953) [Jones Ill. Stats. Ann. 112.089]), under which complaint may be made by "any person . . . chamber of commerce . . . body politic . . . municipal corporation . . . setting forth any act . . . done or omitted to be done in violation, or claimed to be in violation, of any provision of this Act . . . . No complaint shall be dismissed because of the absence of direct damage to the complainant." Within thirty days after service of any order or decision any person may apply for rehearing and "no appeal shall be allowed from any . . . order or decision . . . unless and until an application for rehearing . . . shall first have been filed with and acted upon by the Commission." (§ 67, par. 71 [Ill. Rev. Stats. 1953, ch. 111⅔; Jones Ill. Stats. Ann. 112.092]).

Within thirty days after denial of rehearing or after "final" order or decision upon rehearing "any person . . . affected . . . may appeal to the circuit or

34

superior court . . . . No proceeding to contest any . . . decision or order . . . which . . . is authorized to issue without a hearing . . . shall be brought in any court unless application shall have been first made . . . for a hearing thereon and until after such application has been acted upon. . . . order or decision of the Commission shall not be set aside unless it clearly appears that the finding . . . was against the manifest weight of the evidence . . . or . . . without the jurisdiction of the Commission. . . . orders or decisions of the Commission shall be held to be prima facie reasonable, and the burden of proof . . . shall be upon the person . . . appealing . . . (§ 68, par. 72 [Ill. Rev. Stats. 1953, ch. 111⅔; Jones Ill. Stats. Ann. 112.093]). . . . during the pendency of such appeal . . . the . . . court . . . in its discretion may stay or suspend . . . the operation of the . . . order or decision . . ." upon notice and hearing, and the order of suspension "shall" specifically find that "great and irreparable damage would otherwise result to the petitioner . . . specifying the nature of the damage." (§ 71, par. 75 [Ill. Rev. Stats. 1953, ch. 111⅔; Jones Ill. Stats. Ann. 112.097]).

These various provisions were recognized by plaintiffs when they proceeded before the Commission. Because the Commission set the hearing after the date of defendant's shareholders' meeting, plaintiffs inferred that their only effective remedy was the maintenance of the status quo by injunction. Had the Commission denied the petition, plaintiffs could have appealed under § 67 and § 68 to set the order aside. Success on the appeal, however, would leave the matter where it was before the Commission's order. The provisions for stay by the court pending appeal (§ 71) do not aid a complainant appellant initially denied relief by the Commission's refusal to issue a cease and desist order.

These considerations suggest an inadequacy of remedy for plaintiffs. It must be kept in mind, however, that plaintiffs have not, and do not claim, a property right in the proceeds, which they seek to preserve. They have sought equity's aid not to protect private or corporate property rights, but to protect the public interest. We are of the opinion, however, that the right to proceed before the Commission accorded plaintiffs under § 64 does not invest plaintiffs with the right or duty to protect the public interest, but on the contrary that this is the Commission's own function. A municipality, in the absence of injury to it in its corporate capacity, has no standing generally to sue on behalf of its residents. *City of Waverly v. Auditor of Public Accounts,* 100 Ill. 354. Nor is the right to complain under § 64 without reference to injury accompanied, as an ancillary right, by the right to pursue in equity a remedy which the Commission itself is empowered to seek under § 75 (par. 79 [Ill. Rev. Stats. 1953, ch. 111⅔; Jones Ill. Stats. Ann. 112.101]).

The Commission is expressly empowered to decide the issues raised by plaintiffs' petition. Whether defendant is in a financial position to declare a dividend without violation of its duty to the public to render adequate service is a question peculiarly within the province of the Commission. *American Generator & Armature Co., Inc. v. Commonwealth Edison Co.,* 298 Ill. App. 192. The same is true of the question whether the proceeds of the condemnation and sale should be distributed or kept for future probable service needs.

Presumably the Commission was of the opinion that there was no need of a hearing before the scheduled stockholders' meeting to determine whether there was a threatened violation of defendant's duty to render service or violation of law with respect to the distribution of the proceeds. The record does not

36

show that plaintiffs sought a rehearing to set aside or modify the order setting the hearing, so that an earlier hearing might be had. They may have decided that this procedure would be unavailing in view of the facts set out in their petition and the action of the Commission. We must presume, however, that the Commission acted reasonably. If plaintiffs thought it was acting arbitrarily in failing to act in time, mandamus was available to compel action. *People v. Brady,* 268 Ill. 192, 197.

██ Our Supreme Court has held (*Vestal Co. v. Robertson,* 277 Ill. 425, 429) that where an affirmative statute, introductive of a new law, directs a thing to be done in a certain manner, the thing shall not be done in any other manner. We think that plaintiffs were required to exhaust the procedures given in the Public Utilities Act, through original decision, decision on rehearing and appeal, before invoking jurisdiction beyond the Commission. Plaintiffs were not entitled to abandon the administrative remedy and seek the aid of a court of equity. *Colton v. Commonwealth Edison Co.,* 349 Ill. App. 490.

It may be that pursuit of the administrative relief would avail plaintiffs nothing. This presupposes that the Commission will ultimately decide against plaintiffs and an appeal, even if successful, merely set aside its order. But more immediately, it presupposes that if the proceeds of the condemnation and sale are distributed while plaintiffs pursue their remedies under the Act, a later order for resumption, if made, could not be complied with by defendant. We cannot assume that the Commission's decision on plaintiffs' petition will be against plaintiffs, or that if it is unsuccessful, appeal will not eventually result in a different decision, or that, in any event, the public interest will suffer through loss or probable loss of the curtailed transportation services.

37

■ *Peoples Gas Light & Coke Co. v. Slattery,* 373 Ill. 31, does not apply here. There the utility invoked the aid of equity to protect itself against confiscation of its property. The court said at page 42: "Jurisdiction cannot be taken away from the Equity courts unless a statutory remedy is substituted which is adequate to prevent irreparable injury." Here plaintiffs are not seeking to protect their property rights. They are seeking to have the court act in the public interest in an area where the Commission has been established to represent the public. The Commission "cannot be said to represent one party as against another." *Inter-State Water Co. v. City of Danville,* 379 Ill. 41, 51. These considerations distinguish also *Michel v. Illinois Bell Tel. Co.,* 226 Ill. App. 50. Moreover, in the *Slattery* case the Commission had entered an order which was taken to end its legislative function.

■ Plaintiffs having no property rights in the *res,* the court of equity had no power to interfere with, or attempt to supplement, the administrative procedures set up in the Public Utilities Act.

Section 27a prohibits payment of a dividend unless prescribed conditions are met. In that area the Commission is given the necessary power to determine whether a dividend can be declared, to order the stopping of declaration or payment of an improperly declared dividend and to enforce the reparation of capital before a dividend shall be declared. We think that until the Commission has ended its process with respect to the prayer that it initiate injunctive proceedings, a court of equity is powerless to act.

■ The jurisdiction of the Commission over the subject matter of plaintiffs' petition was exclusive until it made its decision. It had the power to stop the distribution of the proceeds and it had the responsibility for whatever action it took or refused to take.

38

■■■■■■■■■

■■■■■■■■■

The court of equity had no jurisdiction to restrain the distribution of the proceeds. The chancellor abused his discretion in entering the injunctional order.

We need consider no other points. For the reasons given the order for the temporary injunction is reversed.

*Order reversed.*

FEINBERG, P. J. and LEWE, J. concur.