Sol I. Dvorkin *et al.*, Plaintiffs-Appellants, *v.* Illinois Bell Telephone Company *et al.*, Defendants-Appellees.

(No. 59063;

First District (3rd Division)—November 20, 1975.

Donald H. Sharp, L. Bow Pritchett, and Edward Butts, all of Chicago, for appellants.

Max Earl Sherman, of Chicago, for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Sol I. Dvorkin, individually and on behalf of a class, commenced an original action in the circuit court of Cook County for damages against defendants Illinois Bell Telephone Company and American Telephone and Telegraph Company. The trial court granted the motion of Illinois Bell to strike the complaint and dismiss the suit for want of jurisdiction. Plaintiff appeals.

The sole issue for review is whether the instant complaint states a cause of action which may be commenced *originally* in the circuit court. We affirm.

The complaint filed on April 28, 1972, by plaintiff on his own behalf and on behalf of a class consisting of persons and corporations who have been subscribers, lessees, patrons and customers of Illinois Bell from the date the company first began the practice complained of was in two counts. Count I alleged that Illinois Bell had a policy and practice of providing services for the personal use of certain current, former and retired officers, directors, and employees of Illinois Bell either without charge or at less than the rate established and in force as shown by the schedule filed with the Illinois Commerce Commission, all in con-

travention and violation of sections 37, 38 and 39 of the Illinois Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111⅔, pars. 37, 38 and 39); that as a direct result of the loss of revenue, plaintiff and the class are required to pay greater rates for services from Illinois Bell; and prayed that the practice be declared unlawful and enjoined; and that judgment be entered against Illinois Bell for the lost revenue and punitive damages for the use and benefit of the class, and other relief. Count II alleged that the illegal actions were with the knowledge, control, management, connivance and complicity of American Telephone by reason of its ownership of 99 percent of the stock of Illinois Bell, and prayed judgment against American Telephone for the losses and punitive damages to be paid to Illinois Bell for the use and benefit of plaintiff and the class, together with other relief.

Section 37 of the Utilities Act prohibited a public utility from charging greater or less or different compensation than the rates specified in its schedules on file and in effect at the time "except such as are regularly and uniformly extended to all corporations and persons." An amendment effective October 1, 1972 (P.A. 77-2759), added a sentence: "No law of the State shall be construed to prohibit a public utility from furnishing its service, product or commodity to its employees, officers, directors or pensioners, or its employees, officers, directors or pensioners from receiving such service, product or commodity, free or at rates or charges less than those specified in its filed schedules." Ill. Rev. Stat. 1973, ch. 111⅔, par. 37.

Section 38 of the Act prohibits the granting of any preference or advantage and the establishment or maintenance of "any unreasonable difference as to rates or other charges, services, facilities, or in any other respect, either as between localities or as between classes of service." Section 39 further prohibits any utility, its officer, agents and employees, from directly or indirectly permitting any corporation or person "to obtain any service, commodity, or product at less than the rate or other charge then established and in force as shown by the schedules filed and in effect at the time." Ill. Rev. Stat. 1971, ch. 111⅔, pars. 38 and 39.

The trial court, in the order granting Illinois Bell's motion to strike, found that the alleged discrimination is "necessarily so intertwined with establishment of rates or tariffs as to constitute rates or tariffs issue, rather than a question of discrimination per se," and that the exclusive jurisdiction for establishing rates and tariffs and for the recovery of refunds or reparation for allegedly excessive charges is in the Illinois Commerce Commission. Since no ruling was made as to American Telephone, nor was the amendment to section 37 challenged in the trial court, neither will be considered.

Plaintiff contends that in accordance with section 73 of the Illinois Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111⅔, par. 77), a civil action may be commenced in any court of competent jurisdiction for the violation by a public utility of sections 37, 38 and 39 of the Act. Further, that the remedy is cumulative under the provisions of section 72 and 74 (pars. 76 and 78). Defendant Illinois Bell, on the other hand, contends that the complaint states a claim for the recovery of refunds as reparation and is governed by section 72 (par. 76) of the Act, and that the exclusive jurisdiction for such recovery is vested in the Illinois Commerce Commission. The pertinent provisions of sections 72, 73 and 74 follow:

"§ 72. When complaint has been made to the Commission concerning any rate or other charge of any public utility and the Commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount.

\* \* \*

The remedy provided in this section shall be cumulative, and in addition to any other remedy or remedies in this Act provided in case of failure of a public utility to obey a rule. regulation, order or decision of the Commission. [Par. 76.]

\* \* \*

§ 73. In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation.

\* \* \*

No recovery as in this section provided shall in any manner affect a recovery by the State of the penalties in this Act provided. [Par. 77.]

§ 74. This Act shall not have the effect to release or waive any right of action by the State, the Commission, or by any body politic, municipal corporation, person or corporation for any right or penalty which may have arisen or accrued or may hereafter arise or accrue under any law of this State.

All penalties accruing under this Act shall be cumulative of each other, and suit for the recovery of one penalty shall not be a bar to or affect the recovery of any other penalty or be a bar to any criminal prosecution against any public utility, or any officer, director, agent or employee thereof, or any other corporation or person. [Par. 78.]"

In his brief to this court, plaintiff states that the cause was filed to enforce the anti-discrimination provisions of the Illinois Public Utilities Act and to end the granting of free and reduced rate services to employees, management personnel, and retired employees, *and for the return of excess charges* levied against the public as a result of the failure of Illinois Bell and its parent company to comply with the Act.

■■ Section 72 of the Act provides for the recovery of reparations for excessive or unjustly discriminatory amounts charged by a utility when complaint has been made to the Illinois Commerce Commission. By its terms the remedy provided is cumulative and in addition to any other remedy or remedies in the Act in case of failure of a public utility to obey a rule, regulation, order or decision of the Commission. Section 73 of the Act provides for the recovery of civil damages for loss, damages or injury caused by or resulting from any act or omission contrary to any provision of the Act or of the Commission. Such action may be brought in any court of competent jurisdiction for consequential damages as distinguished from a claim for reparation. (See *Malloy v. Illinois Bell Telephone Co.* (1973), 12 Ill.App.3d 483, 299 N.E.2d 517.) Section 74 of the Act, consistently with the provisions of sections 72 and 73, provides that the Act shall not release or waive any right of action for any right or penalty. The provision as to cumulative rights is confined to penalties and suits for recovery of penalty. This latter provision is inapplicable to actions for the recovery of damages or reparations. The action herein is not for penalties, but rather, for a refund as damages or reparations for the allegedly illegal practice.

The Illinois courts have uniformly held that the jurisdiction of the Illinois Commerce Commission as to proceedings against a public utility to recover reparations for excessive charges is primary and exclusive. See *Terminal Railroad Association v. Public Utilities Com.* (1922), 304 Ill. 312, 317, 136 N.E. 797; *Chicago North Shore & Milwaukee R.R. Co. v. City of Chicago* (1928), 331 Ill. 360, 163 N.E. 141; *Medusa Portland*

*Cement Co. v. Illinois Central R.R. Co.* (1936), 287 Ill.App. 549, 5 N.E. 2d 782; *Adler v. Northern Illinois Gas Co.* (1965), 57 Ill.App.2d 210, 206 N.E.2d 816; *Cummings v. Commonwealth Edison Co.* (1965), 64 Ill.App.2d 320, 213 N.E.2d 18; and *Malloy v. Illinois Bell Telephone Co.* (1973), 12 Ill.App.3d 483, 299 N.E.2d 517.

A common-law action will not originally lie "at any time or under any circumstances" for damages on account of excessive rates. (*Medusa Portland Cement Co. v. Illinois Central R.R. Co.*, 287 Ill.App. 549, 565.) Equity will not take jurisdiction of an action in which collateral attack is made on the order of the Commission. *Chicago, North Shore & Milwaukee R.R. Co. v. City of Chicago*, 331 Ill. 360, 375.

In *Colton v. Commonwealth Edison Co.* (1953), 349 Ill.App. 490, 111 N.E.2d 363, in affirming the dismissal of a class action for injunctive relief which alleged that a revision of rates deprived the class of constitutional rights, the court held that if the legal remedy consists in part of proceedings before an administrative agency, equity should decline jurisdiction; that the Public Utilities Act has superseded all common-law remedies so far as rates are concerned; that the statutory remedies afforded consumers under the Act are exclusive; that the rate filed with the Commission by a utility is presumed to be lawful; that the complaint must be made in the first instance before the Commission; and that the courts do not have jurisdiction to fix rates.

In *Burke v. Illinois Bell Telephone Co.* (1952), 348 Ill.App. 529, 109 N.E.2d 358, the court affirmed the dismissal of a class action which sought a refund for defendant's failure to publish telephone directories semiannually. In holding that the trial court did not have jurisdiction of the subject matter, the court found that the gist of plaintiff's claim was for reparations within the meaning of section 72 and not for consequential or actual damages under section 73 as contended by the plaintiff.

In the recent case of *Malloy v. Illinois Bell Telephone Co.*, a class action complaint was filed against Illinois Bell in the circuit court which sought a refund for a six-day period during which electric service had been disrupted by vandalism. There, as in the instant case, plaintiff relied on section 74 in maintaining that the claim was within section 73 and not section 72. The court rejected the argument and affirmed the dismissal of the complaint, concluding that the claim was for reparations under section 72 and not for consequential damages, and that the Illinois Commerce Commission therefore had exclusive jurisdiction.

Plaintiff here, as did the plaintiff in *Malloy*, cites *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 29 N.E.2d 1014. In *Barry*, plaintiff initially filed a petition before the Illinois Commerce Commis-

sion for reparations which alleged that the utility wrongfully accused him of unlawfully bypassing the meter and taking electricity, and wrongfully disconnected service and refused restoration until he paid $800, the estimated amount of current alleged to have been taken by fraud. Plaintiff prayed to be exonerated of the unjust charges of fraud and the return of the excess payment, which demand was reduced to $697 on hearing. The Commission refused to determine whether the current was obtained by fraud, and ordered that the petition be dismissed and the parties left to their respective remedies at law. Plaintiff Barry then filed a complaint in court, not as a review of the Commission's order but as a new action. The first two counts alleged the foregoing charges, and additionally, that plaintiff was willing to pay any amount due, and sought damages for a wrongful disconnection of service and for the loss of business thereby sustained. The third count alleged that agents of the utility charged plaintiff with being a thief by stealing current, and therein sought damages for slander. The only issue presented was whether the prior determination by the Commission was a bar to the action at law. The Supreme Court reversed the trial court's dismissal and held that the action was not barred. The Court stated that the finding by the Commission as to reparations involved a claim for the repayment of specific money collected in excess of the legal rate, whereas the action at law involved a claim for unliquidated damages to plaintiff, his business, and for slander resulting from the utility's abuse of power. *Barry* supports the dismissal in the instant case.

■■ Plaintiff argues that the instant action is brought to enforce the antidiscrimination provisions of the Illinois Public Utilities Act and that plaintiff and the class have been and are required to pay greater rates and charges than they would if the practice of granting services without charge or at reduced rates by Illinois Bell had not been permitted. Plaintiff seeks "the return of excess charges." Under somewhat similar facts, in *Cummings v. Commonwealth Edison Co.* (1965), 64 Ill.App.2d 320, 324, 213 N.E.2d 18, the court stated:

"It is apparent that the sole basis for plaintiff's claim, irrespective of the label she chooses to employ, is that she and other customers were charged excessive rates for which she wants reparations. The fact that plaintiff does not seek to upset a rate schedule or fix utility rates for the future does not bring this matter within the powers of a court of equity and outside the exclusive jurisdiction of the Illinois Commerce Commission."

Although the complaint in the instant case prays for such exemplary and punitive damages as may be found proper, it addresses itself to the proposition that if Illinois Bell had not given discounted

services to some of its employees, plaintiff's rates would have been lower, and that Illinois Bell should be required to repay, account for, refund or credit plaintiff and the class the appropriate loss suffered as a result of the allegedly unlawful practice. This is necessarily predicated upon the allegedly "excess charges" and therefore, upon the excessive rates to plaintiff and the class, and simultaneously, upon the inadequate charges or rates to the employees and officers. Plaintiff, in order to obtain a return of the portion of the charges paid by the class as excess—clearly reparations as provided in section 72—seeks to reduce the rates paid by him and the class by eliminating the practice of discounted services to provide the additional revenues necessary to effect such reduction. If the practice is so eliminated and the present rate is held excessive as alleged, a new rate must then be established, based on the new revenues, and applicable to the class as well as the employees and officers. This would require the court to undertake the function of the Commission by fixing what would be considered a reasonable charge if the concession services had not been granted. This would further involve rate-making by the court. The statutory remedies and procedures prescribed by the Illinois Public Utilities Act are primary and exclusive; the court does not have jurisdiction to fix the rates. See *Colton v. Commonwealth Edison Co.*

■■ Plaintiff further contends that without court action the plaintiff class has no adequate remedy at law. He argues that the practice of giving reduced rates and free services dates back to General Order 18 issued by the Commission in 1914; that the Commission, during a certain rate case, rejected the contention that Illinois Bell was acting improperly in providing such free and reduced rate service to employees; and that in view of the Commission's willingness for more than 58 years to permit such practice, contrary to the Act, further resort to the Commission for relief is patently useless.

The rate case to which plaintiff refers ultimately reached the Illinois Supreme Court in *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill.2d 461, 303 N.E.2d 364. On September 23, 1971, Illinois Bell filed with the Illinois Commerce Commission new tariff schedules that provided for a general increase in telephone rates applicable to all exchanges. The matter was there pending when the instant suit was filed on April 28, 1972. Numerous municipalities, persons, organizations and groups filed appearances. On August 11, 1972, the Commission entered an order granting the rate increases. The order contained findings which specifically included a recital that the Independent Voters of Illinois (IVI) proposed several adjustments to both Revenue and Expenses. The order recited: "They advocate the elimination of free ser-

vice and reduced rates for Company employees and pensioners; the elimination of virtually all advertising, public relations, and charitable contribution expenses of all types and descriptions"; and that "An examination of the Record does not substantiate the sums for which the IVI contended adjustments should be made." The order specifically considered the items of advertising, public relations, and charitable contributions, but did not further mention the elimination of free service and reduced rates. The order did, however, provide that any objections and motions made in the proceedings that remained were disposed of in a manner consistent with the ultimate conclusions contained therein. Following a petition for rehearing, an appeal was taken to the circuit court and later to the Supreme Court as provided by section 68 (Ill. Rev. Stat. 1971, ch. 111⅔, par. 72). The Commission order was affirmed by the circuit court. On the appeal to the Illinois Supreme Court, the contention that it was error to refuse to disallow the concession service rates as an operating expense was abandoned and not considered. Plaintiff Dvorkin did not seek to intervene or participate in such proceeding at any time, as authorized by statute (Ill. Rev. Stat. 1971, ch. 111⅔, par. 69), but has instead brought the instant action in equity.

Plaintiff maintains that the Commission's willingness, for more than 58 years, to permit the practice makes further resort to the Commission for relief patently useless. In *Adler v. Northern Illinois Gas Co.*, a class action was brought on behalf of all customers of the utility for a declaratory judgment and accounting, alleging that the utility had fraudulently enriched itself through the sale of natural gas to its customers. The complaint, similar to the contention herein, alleged that plaintiff had properly filed no complaint with the Illinois Commerce Commission because " '50 years of history of Illinois utility regulation apparently discloses no precedent for lower rates obtained by individual consumers against large utilities. Such remedy has become largely a fiction or illusion.' " (57 Ill.App.2d 210, 214.) The allegations there were insufficient to avoid the primary jurisdiction of the Commission. The court held that the complaint, although alleging fraud, did not present a cause of action for court proceedings until the prescribed statutory procedures were exhausted.

Plaintiff argues that he should not be required to engage in administrative proceedings where the dispute is limited to a purely legal issue and where the outcome is predictable and the result foredoomed. This argument was approved in *People ex rel. Naughton v. Department of Public Aid* (1973), 12 Ill.App.3d 43, 297 N.E.2d 784; however, the decision was reversed in *People ex rel. Naughton v. Swank* (1974), 58 Ill.2d 95, 317 N.E.2d 499. The Supreme Court held that an applicant for relief

who is dissatisfied with the results of his internal administrative appeal may not ignore the administrative review provided by statute to pursue a review of the determination by any form of action he chooses. The court stated at page 102 that the legislative purpose "was designed to channel into a single procedure the judicial review of the decisions made by administrative agencies in particular cases." In the instant case, plaintiff seeks relief by original proceedings in equity without first taking any action before the Commission for the requested remedy.

■■ The doctrine of exhaustion has long been a basic principle of administrative law, and a party aggrieved by administrative action ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to him; however, exceptions recognize the rule that equitable relief will be available if the remedy at law is inadequate. (See *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill.2d 350, 326 N.E.2d 737.) Here, plaintiff would presume not only that the Commission will decide against him, but also that any appeal by administrative review to the trial and appellate courts will not provide appropriate relief. The avoidance of a prior administrative decision would severely undermine the legislative purpose manifest in providing a statutory review. We cannot assume that the Commission's decision will be against plaintiff or that if unsuccessful, appeal will not eventually result in a different decision, or that in any event, the public interest will suffer through loss or probable loss of service. *City of Wheaton v. Chicago, Aurora & Elgin Ry. Co.* (1954), 3 Ill.App.2d 29, 37, 120 N.E. 2d 370.

■■■ Plaintiff also argues that the Commission has no jurisdiction to entertain class actions and that the inherent powers of a court of equity are needed to provide redress. The commencement of a class action does not automatically invoke the jurisdiction of equity. The instant proceeding was brought on "behalf of all other persons * * * who have been subscribers * * * from the date upon which said company first began its unlawful practice." Damages are claimed and sought for those who *were* and *are* now subscribers. This, plaintiff clearly cannot do. As noted in *Burke v. Illinois Bell Telephone Co.*, 348 Ill.App. 536, "* * * subscribers are served by different exchanges with different classes of service and rates and for varying periods of service"; the claim of each subscriber is legally separate and distinct. Each claim presents a different question with respect to the right of recovery and the amount of alleged damages. The class action herein does not have the requisite common interest in the questions involved. (See *Hagerty v. General Motors Corp.* (1974), 59 Ill.2d 52, 57-59, 319 N.E.2d 5.) Furthermore, since we have held that plaintiff has no individual cause

of action, it necessarily follows that any attempted class action must also fail. *Zelickman v. Bell Federal Savings & Loan Association* (1973), 13 Ill.App.3d 578, 587, 301 N.E.2d 47; *De Phillips v. Mortgage Associates, Inc.* (1972), 8 Ill.App.3d 759, 764, 291 N.E.2d 329.

■■ Plaintiff finally contends, without citation of any authority, that if the Commission were to take action, the recovery would be limited to a period of one year under section 72 (Ill. Rev. Stat. 1971, ch. 111⅔, par. 76), and that it makes no sense to restrict the plaintiff class to such limitation where the alleged violations have persisted over 50 years without intervention by the Commission. The contention is without merit.

For the foregoing reasons the order of the circuit court of Cook County dismissing plaintiff's complaint is affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.