(No. 32976.—

Mandel Brothers, Inc., Appellant, *vs.* Chicago Tunnel Terminal Company *et al.*—(Illinois Commerce Commission *et al.*, Appellees.)

*Opinion filed January 20, 1954—Rehearing denied March 15, 1954.*

Hopkins, Sutter, Halls, DeWolfe & Owen, of Chicago, (William G. Blood, and Frank B. Sanders, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (HARRY R. BEGLEY, THOMAS S. CHUHAK, and JOHN L. ROACH, of counsel,) for appellee Illinois Commerce Commission; SCHUYLER, RICHERT & STOUGH, of Chicago, (JAY STOUGH, and JOSEPH R. JULIN, of counsel,) for appellee Chicago Tunnel Terminal Company.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

This case concerns the right of a shipper to recover reparations for allegedly excessive freight rates. It is here on appeal from an order of the circuit court of Cook County which affirmed in part and reversed in part an order of the Illinois Commerce Commission which had denied the claim for reparations.

On September 25, 1946, Chicago Tunnel Terminal Company, a public utility which operates an underground railway serving the Chicago Loop area, filed with the Illinois Commerce Commission a schedule of increased rates, to become effective October 28, 1946. By this schedule, the carload rate for transporting coal was increased from 74 cents per ton to $5 per carload, an increase of almost one hundred per cent.

The commission suspended the increased rate schedule and conducted a hearing at which Mandel Brothers, Inc., which operates a department store in Chicago, opposed the increase in rates. On January 29, 1947, the commission found the increased rates to be just and reasonable and set aside its suspension order. A petition for rehearing was denied, and Mandels appealed to the circuit court of Cook County. On January 24, 1949, that court set aside the commission's order approving the increased rates. No further appeal was taken.

From January 29, 1947, to August 24, 1948, when Mandels ceased to use the Tunnel Company's service, the Tunnel Company charged and Mandels paid the $5 per-car

rate for coal delivered. On April 13, 1949, Mandels filed with the commission its complaint for reparations, which alleged that the rates it paid during this period were excessive to the extent that they exceeded the old rate of 74 cents per ton, and sought the entry of an order directing the Tunnel Company to make reparation in the sum of $8342.77, the total amount of the difference between charges at the old rate and at the new.

The Tunnel Company moved to dismiss the complaint for reparations upon the ground that the rates which it had charged were reasonable and lawful rates which had been approved by the Commerce Commission, and also because the complaint for reparations was filed more than one year after the services in question had been furnished by the Tunnel Company, and so was barred by the period of limitations contained in section 72 of the Public Utilities Act. Ill. Rev. Stat. 1953, chap. 111⅔, par. 76; Jones Ann. Stat. 112.098.

The commission denied the motion to dismiss, and after a hearing on the merits denied the claim for reparations, finding it unnecessary to consider the question of limitations. Mandels' petition for rehearing was denied, and it appealed to the circuit court of Cook County from the order of the commission denying reparations.

On appeal, the circuit court was of the opinion that apart from limitations, Mandels was entitled to reparations based upon the difference between the two rates, but that Mandels' claim was barred by limitations, with the exception of the sum of $187.81, which represented overcharges made within one year prior to the filing of the complaint for reparations. The order of the circuit court affirmed the order of the commission as to all amounts in excess of $187.81, set aside the order of the commission insofar as it denied reparations in that amount, and remanded the case to the commission, with directions to enter an award in the amount of $187.81. Mandels has appealed from this

order and the Tunnel Company has cross appealed, claiming that the circuit court erred in permitting recovery in the amount of $187.81.

The first question for determination is whether or not, upon these facts, Mandels is entitled to reparations. Our view upon that question makes it unnecessary to consider the asserted bar of limitations, and the other question raised by the parties which concerns the propriety of the order of the circuit court to the extent that it affirms in part and reverses in part the order of the commission.

The common-law right to recover reparations for unreasonable charges by public utilities has been superseded by statutory provisions. (*Terminal Railroad Ass'n* v. *Public Utilities Com.* 304 Ill. 312, 317.) That right is now governed by section 72 of the Public Utilities Act, the pertinent portion of which is as follows: "When complaint has been made to the Commission concerning any rate or other charge of any public utility and the Commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount. If the public utility does not comply with an order of the Commission for the payment of money within the time fixed in such order, the complainant, or any person for whose benefit such order was made, may file in any court of competent jurisdiction a petition setting forth briefly the causes for which he claims damages and the order of the Commission in the premises. Such suit shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the order of the Commission shall be prima facie evidence of the facts therein stated. If the petitioner shall finally prevail, he shall be allowed a reasonable attorney's fee to be taxed and col-

lected as a part of the costs of the action." Ill. Rev. Stat. 1953, chap. 111⅔, par. 76.

The fundamental issue in this case is whether a rate which has been approved by the Commerce Commission after a hearing as to its reasonableness can be termed an "excessive" rate for the purpose of awarding reparations. We hold that it cannot, even though the rate approved by the commission has subsequently been set aside upon judicial review.

We have not heretofore considered this question. Under the Public Utilities Act of 1913, when we were dealing with initial schedules of rates filed by public utilities which had become effective without prior examination and approval by the regulatory agency, we held that the fact that the rate charged by a utility was the rate specified in a tariff filed with the regulatory agency did not preclude a subsequent claim for reparations upon the ground that the rate charged was unreasonable or discriminatory. (*Terminal Railroad Ass'n* v. *Public Utilities Com.* 304 Ill. 312.) But rates established or approved by a regulatory body have generally been held to stand upon a different footing. "Where the charges collected by the carrier were based upon rates which had theretofore been established or approved by the public authority, the fact that such rates are subsequently reduced affords no right of action for damages or for the recovery of the difference between the old and new rates upon the ground that the prior rate was unreasonable, unless such right is conferred by the governing statute, as is held to be the case in some jurisdictions." 9 Am. Jur., Carriers, sec. 175; cf.: *Arizona Grocery Co.* v. *Atchison, Topeka and Santa Fe Railway Co.* 284 U.S. 370; *Texas Co.* v. *Chicago and Alton Railroad Co.* 117 Fed. 2d 210; see cases collected, 97 A.L.R. 406.

Mandels does not contest this generally recognized distinction. Rather it argues that the rates here involved were fixed by the carrier itself. Attempting to distinguish *Ari-*

*zona Grocery Co.* v. *Atchison, Topeka and Santa Fe Railway Co.* 284 U.S. 370, it says: "In the first situation the carrier publicly establishes its own rates which are subject to challenge for unreasonableness and if successfully challenged reparation follows. In the second situation the Commission itself fixes by its own order utility rates and such fixing is in the nature of legislation. The Court held in the second situation that during the period that the rates fixed quasi-legislatively by the Commission were in effect, payments made thereunder could not be recovered even though it was later held that such rates were unreasonable. The case now before this Court presents the first situation. The Tunnel Company filed its own new schedule of rates. The Commission, acting in a quasi-judicial capacity, ruled upon the reasonableness of those rates and the Circuit Court on appeal reversed the Commission's order."

We do not agree. In our opinion the action of the commission in approving the new schedule of rates was legislative in character and prospective in its operation. The procedure fixed by the act and followed by the commission unmistakably so indicates. By section 36, a proposed change in rate is required to be filed with the commission, which is authorized "* * * either upon complaint or upon its own initiative without complaint, at once, and if it so orders, without answer or other formal pleadings by the interested public utility * * * to enter upon a hearing concerning the propriety of such rate * * * and pending the hearing and the decision thereon, such rate * * * shall not go into effect. * * * On such hearing the Commission shall establish the rate * * * which it shall find to be just and reasonable." (Ill. Rev. Stat. 1953, chap. 111⅔, par. 36.) By section 37, a public utility is prohibited from charging "a greater or less or different compensation" than the rate so approved by the commission. (Ill. Rev. Stat. 1953, chap. 111⅔, par. 37.) For

failure to charge the approved rate, a public utility is subjected to the severe penalties prescribed by section 76. Ill. Rev. Stat. 1953, chap. 111⅔, par. 80.

In the present case the rate increase proposed by the Tunnel Company was suspended by the commission and a hearing was held in accordance with the statute. As a result of that hearing the commission entered its order finding that the proposed rates were just and reasonable, and setting aside its suspension order. The new rate of $5 per car was thus established by the commission's order as the rate which the utility was required by the statute to charge.

Mandels also contend, however, that the order of the circuit court which purported to "reverse, set aside and hold for naught" the order of the commission establishing the new rate was an adjudication by the court that the rate was void from the outset and was therefore "excessive" within the meaning of section 72 which governs the right to reparations. To ascribe such an effect to the order of the circuit court is, in our opinion, to contradict the scheme of the statute. Section 71 of the act, which governs judicial review of orders of the commission deals specifically with the question of the rate to be charged during the pendency of an appeal. It provides, "The pendency of an appeal shall not of itself stay or suspend the operation of the * * * order * * * of the Commission, but during the pendency of such appeal the circuit or superior court, or the Supreme Court, as the case may be, in its discretion may stay or suspend, in whole or in part, the operation of the Commission's * * * order * * *." The operation of the rate approved by the commission was not stayed by the circuit court, and Mandels did not request that it be stayed.

It follows that the rate approved by the Commerce Commission as just and reasonable was the rate which the utility was required to charge so long as the order of the

commission remained in effect. It cannot therefore be said that in charging that rate the utility charged an excessive rate which gave rise to a claim for reparations. It follows that the judgment of the circuit court must be reversed and the order of the Commerce Commission confirmed.

*Judgment reversed; order of commission confirmed.*