Alton Brick Co., a Corporation, et al., Plaintiffs-Appellees, v. Alton Water Co., a Corporation, et al., Defendants-Appellants.

Gen. No. 63–F–27.

Fourth District.

September 4, 1963.

Rehearing denied September 30, 1963.

Isham, Lincoln & Beale, of Chicago, and Malcolm D. Durr, of Alton (Charles A. Bane and Arthur C. Gehr, of counsel), for appellants.

J. F. Schlafly, Jr., and R. Emmett Fitzgerald, of Alton, for appellees.

HOFFMAN, JUSTICE.

This appeal involves the propriety of a decree entered in a class action brought on behalf of customers of the defendant Alton Water Company for refund of excess charges for water service furnished during the period of November 25, 1958 to August 1, 1960.

The defendant Alton Water Company was engaged in the business of furnishing water service to approximately 14,000 customers in Alton and neighboring areas. During the period from June 1, 1952 to January 1, 1958 it charged according to rates which had been approved by the Illinois Commerce Commission on May 20, 1952. On this appeal, these 1952 rates are referred to as the "100% Rates."

On February 5, 1957 defendant water company filed with the Illinois Commerce Commission a rate schedule proposing an increase in water rates of approximately 50% over the rates then in force. These rates are referred to as the "150% Rates." After a hearing, the Commission found that the 150% rates were unreasonable and directed the defendant water company to file a revised schedule, setting forth rates which the Commission found were just and reasonable. These rates provided for an increase of 47½% over the 1952 rates, are hereinafter referred to as the "147½% Rates," and were made effective as of January 1, 1958.

The City of Alton and others appealed from the Commission's order establishing the 147½% rates to the Circuit Court of Madison County and on November 25, 1958 that court entered an order setting aside and vacating the order establishing the 147½% rates. From that ruling, an appeal was taken to the Supreme Court of Illinois by the defendant water company and the Illinois Commerce Commission.

To stay the effect of the order of November 25, 1958, pending the appeal, the defendant water com-

pany posted a supersedeas bond in the amount of $270,000. On January 22, 1960 the Supreme Court issued its first opinion on the appeal. Petitions for rehearing were filed and on March 30, 1960 the Supreme Court filed a modified opinion, the concluding portion of which is as follows: (See 19 Ill2d 76 at Page 93, 165 NE2d 513 at Page 523)

"For the reasons stated above, the circuit court properly reversed and set aside the order of the Illinois Commerce Commission. Its judgment must be modified, however, to order the cause remanded to the Commission for further proceedings in accordance with the views expressed in this opinion. (Citations) The judgment as so modified is affirmed."

The mandate of the Supreme Court was issued on April 1, 1960, was dated January 22, 1960 and filed in the Circuit Court on April 4, 1960. The mandate stated that the judgment of the Circuit Court of Madison County was affirmed in all things and was to stand in full force and effect notwithstanding the matters assigned for error "and modified to order the cause remanded to the Commission for further proceedings in accordance with the views expressed in the opinion." Costs were taxed against the appellant. A request for clarification and for an amendment of the mandate was made by the Commission and defendant water company, but the request was denied.

After the remand, upon motion of the defendants, the Circuit Court on May 9, 1960 entered an order pursuant to the mandate, remanding the cause to the Commission for further proceedings in accordance with the Supreme Court's opinion. On June 10, 1960 defendant water company filed a motion with the Commission requesting that it promptly effectuate the mandate.

On July 29, 1960 the Commission, without hearing any further evidence, entered an order authorizing the defendant water company to file a new schedule of rates effective August 1, 1960. The new rates established were equal to approximately 135.19% of the 1952 100% rates and will be referred to as the "135% rates."

An appeal was taken by the City of Alton and others from this new rate order to the Circuit Court of Madison County. The Circuit Court affirmed the new rate order and the Supreme Court reaffirmed on May 25, 1962. See 25 Ill2d 112, 182 NE2d 665.

In the instant case, which is an original action brought in the Circuit Court of Madison County, the plaintiffs seek a refund for the period of time from November 25, 1958, when the Circuit Court set aside the 147½% rates, to August 1, 1960, the effective date of the Commission's order establishing the present 135.19% rates. This period of time will be referred to herein as the "refund period." During this period of time, by virtue of the supersedeas bond, defendant water company collected rates in accordance with the 147½% rate schedule.

The present suit was filed on April 1, 1960 and was brought to recover upon the supersedeas bond. Under it, plaintiffs claim they are entitled to a refund of the difference between the amount collected during the refund period and the amounts which would have been collected under the 1952 100% rate schedule. The Court held that the plaintiffs were correct in their position, that the amount of the refund due exceeded the amount of the bond, and entered judgment in favor of plaintiffs for the sum of $270,000 (the principal amount of the bond) plus interest, computed at 5% per annum from January 22, 1960, being the date of the Supreme Court's first opinion affirming the appeal on the 147½% rate schedule.

On June 24, 1960, plaintiffs were granted leave to amend their complaint by adding Count II, a class action, alleging a common law claim for a refund of the difference between the amount collected during the refund period and the 1952 100% rate schedule, with interest at 5%. Under this count, the court found in favor of the plaintiffs for the difference between the amount collected during the refund period (147½% rates) and the 1952 100% rates, together with interest at the rate of 5% per annum from November 25, 1958.

Counts I and II were referred by the trial court to a special master for hearing of evidence and oral arguments. After the master had heard evidence and was preparing a draft of his report, plaintiffs requested leave to further amend the complaint by adding a third count. Leave was granted on June 23, 1961 and Count III was added. It also was a representative suit and alleged a cause of action under Section 73 of the Public Utilities Act. (Ill Rev Stats 1961, c 111⅔, § 77.) In Count III, plaintiffs asked for a refund in the same amount as under Count II and in addition demanded exemplary and punitive damages for alleged wilfulness in charging the 147½% rates from January 22, 1960 (the date of the first opinion of the Supreme Court) to August 1, 1960 (the effective date of the Commission's order setting up the 135.19% rates) and also asked for attorneys fees. The trial court held for plaintiffs on Count III and decreed that the defendant water company was liable to the plaintiffs for exemplary and punitive damages and for attorney fees for "wilfully charging said unlawful water rates."

The decree of the court further provided that the liability against the defendants under Counts I, II and III was not to be cumulative as to any or all of the plaintiffs and that liability or payment to the respec-

456

tive plaintiffs should be adjusted as equity required pro rata and pro tanto, as to all items.

The defendant water company recognizes that it must make a refund to plaintiffs, but it is the defendants' contention that they are liable only on Count I and then only to the extent of the difference between the amounts collected during the refund period (147½%) and the amounts which would have been collected had the rates ultimately found to be just (135.19%) been in effect during the refund period, together with interest thereon. This amount would be substantially less than the principal amount of the supersedeas bond.

 Defendants contend that they are not liable under Count I for the full amount of the supersedeas bond because there has been no "final order" upon which payment under the bond was conditioned, and because its liability for refund is limited to the excess over and above the rates ultimately found to be just and reasonable. Under Count II, a common law action, they argue relief is barred by Section 72 of the Public Utilities Act, Ill Rev Stats 1961, c 111⅔, § 76. Defendant's claim Section 72 provides the exclusive remedy for recovery of refunds of excessive rates and this procedure was not followed. Under Count III defendants argue that there is no basis for finding that the defendants were liable for punitive damages as there was no wilful "charging of unlawful rates" as provided in Section 73 of the Public Utilities Act, Ill Rev Stats 1961, c 111⅔, § 77. Defendants further complain that the decree was in error in charging interest at 5% under Count I from January 22, 1960 and under Counts II and III from November 25, 1958. The master had recommended interest from August 1, 1960 under Count I only.

In answer, plaintiffs state that the Supreme Court's decision of January 22, 1960, as modified March 30,

457

1960, constituted a final order, and that therefore defendant was liable for the face amount of the bond. They further contend that the Circuit Court had jurisdiction under Counts II and III; that Section 72 of the Public Utilities Act did not create an exclusive jurisdiction in the Commission; and that since the defendant water company *wilfully* charged the 147½% rates after April 4, 1960 it was liable for punitive damages under Section 73 on the Public Utilities Act. Plaintiffs further claim that on equitable principles it is entitled to the interest allowed them by the court.

Counsel representing the parties on this appeal have very ably and effectively briefed and argued their various propositions and have informed the court fully on the issues involved and the law applicable. The trial court, too, gave considerable study to each item in issue and in a lengthy statement of reasons for his decision, gave a detailed analysis of the applicable rules to justify the results he announced. These briefs and the court's opinion have been very helpful to us in understanding the problems involved in this case.

Taking Count I first, we note that the supersedeas bond sued upon is as follows:

> "The condition of their obligation is that,
>
> "Whereas, on February 5, 1957, the Alton Water Company issued a new schedule of rates for water service to its customers, and such schedule of rates was approved by an order of the Illinois Commerce Commission, dated December 18, 1957, such rates becoming effective January 1, 1958; and
>
> "Whereas, the Circuit Court of Madison County entered an order dated November 25, 1958, setting aside and vacating the order of the Illinois Commerce Commission approving such new schedule of rates; and

458

"Whereas, the Illinois Commerce Commission and the Alton Water Company filed on November 25, 1958, Notices of Appeal indicating their intent to appeal from the order of the Circuit Court of Madison County to the Supreme Court of Illinois; and

"Whereas, the Alton Water Company desires to continue to collect, pending the determination of the appeal by the Supreme Court of Illinois, the rates approved by the Commission's order of December 18, 1957; and

"Whereas, the Alton Water Company, if the order of the Circuit Court of Madison County dated November 25, 1957, is affirmed on appeal, will have collected amounts to which it was not entitled to the extent that the rates approved by the order of the Illinois Commerce Commission, dated December 18, 1957, exceed the rates in effect on February 4, 1957.

"Now, Therefore,

"(1) if the order of the Circuit Court of Madison County, dated November 25, 1958, is affirmed by the Supreme Court of Illinois, and if the Alton Water Company shall, *as promptly as possible* after the entry of the final order of the Supreme Court of Illinois affirming the order of the Circuit Court of Madison County, refund to its customers, at their last known addresses as shown on the books of the Company, the difference between the amounts collected by the Company after November 25, 1958, and date of entry of the order of the Circuit Court of Madison County, under the rates approved by the order of the Illinois Commerce Commission dated December 18, 1957, and the amounts which would have been collected under the schedule of rates in effect on February 4, 1957, or,

459

"(2) if the order of the Circuit Court of Madison County, dated November 25, 1958, is vacated and set aside and the order of the Illinois Commerce Commission, dated December 18, 1957, reinstated, then, and in those events, this obligation shall be void, but otherwise it shall remain in full force and effect."

The water company first argues that they are not liable on this bond because no "final order" was entered by the Supreme Court. For authority, they cite Brauer Machine & Supply Co. v. Parkhill Truck Co., 383 Ill 569, 50 NE2d 836 and Laclede Gas Light Co. v. Public Service Commission, 304 US 398, 58 S Ct 988. The company takes the position that the decision of the Supreme Court entered January 22, 1960 was not a "final order" within the meaning of the bond because of the remand "to the Commission for further proceedings."

It is stated in the bond that it would be in full force and effect if the order of the Circuit Court was not vacated and set aside and the 147½% rates reinstated. The mandate of the Supreme Court provided that the judgment "be affirmed in all things and stand in full force and effect." Said judgment was modified "to order the cause remanded to the Commission for further proceedings in accordance with the view" etc.

It is unequivocably clear to us that this mandate did not reinstate the 147½% rates. Moreover, it clearly affirmed the Circuit Court's decision setting aside said rates. Because upon the setting aside of a Commission's order the cause is remanded in the natural course of things to the Commission for further proceedings (Peoples Gas Light & Coke Co. v. City of Chicago, 309 Ill 40, 139 NE 867); the remand portion of the Supreme Court's order here did not negate its finality.

460

We point out, further, that it has been held that a substantial affirmance is sufficient to impose liability upon an appeal bond. Clark v. Selfridge, 274 Ill 275, 113 NE 617; Foster v. Epps, 27 Ill App 235.

We therefore hold that the supersedeas bond was in full force and effect and defendant is liable upon it.

■■■■■ The extent of defendant's liability upon the bond depends upon the amount of the refund due. It is the law that rates established by the Commission are legal, valid and collectible by a utility until they are set aside by a court. Mandel Bros., Inc. v. Chicago Tunnel Terminal Co., 2 Ill2d 205, 117 NE2d 774. Based upon this rule, the water company argues that it properly charged the 147½% rates from their effective date of January 1, 1958 until they were set aside by the Circuit Court on November 25, 1958. It claims that no refund of these collections can be ordered, and, in fact, the plaintiff's, agreeing with this, have not in this suit claimed any refund for this period of time. There is another rule, challenged by neither party, that rates cannot be fixed retroactively by the Commission. Because the 147½% rates were set aside on November 25, 1958 and the new and final 135% rates were not made effective by the Commission until August 1, 1960, the plaintiffs argue that the overcharge during said period is the difference between the 147½% rate and the old 100% rate.

To counter this, defendant relies heavily upon Atlantic Coast Line R. Co. v. State of Florida, 295 US 301, 55 S Ct 713, 79 L Ed 1451 and United States, et al. v. Morgan, 307 US 183, 59 S Ct 795. Both of these cases deal with the question of the proper distribution of a fund collected during an appeal of a rate making decision, and they hold, upon equitable principles, that the rates which can be collected during the appeal period are the rates which are ultimately

found to be just and reasonable. Consequently, based upon these cases, defendant argues that the maximum amount of the refund during the period in question should be the difference between the 147½% rates and the 135% rate, which was ultimately found to be the proper rate. Defendant also cites City of Edwardsville v. Illinois Bell Telephone Company, 310 Ill 618, 142 NE 197 to support an argument that it could have charged the 150% rate.

All of these arguments overlook the fact that Count I is an action to recover upon the supersedeas bond. It is not an action to secure a refund for rate overcharge. Because a supersedeas bond is a contract between the parties (3 ILP § 1021, p 267) it alone, pursuant to contract law, will determine the liability of the defendant, if any. Such being the case, we do not deem it necessary to decide what the proper rate should have been during the refund period. Instead we refer to the bond itself, which was prepared and filed by defendants' counsel, and find that it clearly and unequivocably sets forth the answer.

This contract clearly states that the defendant must refund to its customers the difference between the rates approved by the Commission (147½%) and the rates "in effect on February 4, 1957." The rates in effect on February 4, 1957 were the 100% rates, for nothing was done, either by the defendant or the Commission to change these rates until February 5, 1957.

We hold, therefore, that under Count I, the defendant is liable during the refund period, to the extent of the bond for the difference between the 147½% rate and the 100% rate.

As a defense to Count II, which alleged a common law claim for refund, defendants rely upon Section 72 of the Public Utilities Act, the pertinent provisions of which are as follows:

462

"When complaint has been made to the Commission concerning any rate or other charge of any public utility and the Commission has found, after a hearing, that the public utility has charges an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount.

"If the public utility does not comply with an order of the Commission for the payment of money within the time fixed in such order, the complainant, or any person for whose benefit such order was made, may file in any court of competent jurisdiction a petition setting forth briefly the causes for which he claims damages and the order of the Commission in the premises. Such suit shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the order of the Commission shall be prima facie evidence of the facts therein stated. If the petitioner shall finally prevail, he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of the costs of the action."

This statute was first interpreted by our Supreme Court in Terminal R. Ass'n v. Public Utilities Commission, 304 Ill 312, 136 NE 797. In that case, the Court said on page 317:

"The evident intent and purpose of the legislature in providing a method by which reparation may be recovered and in requiring that an application therefor shall be first made to the commission, precludes an action at law for such repara-

463

tion until the commission has heard a claim therefor. This is the view taken by the Supreme Court of the United States with reference to similar provisions in the Interstate Commerce act."

Consistently since the Terminal R. R. case, the courts of this state have adhered to the above statement of law and have held that the common law right to recover reparations for unreasonable charges by public utilities has been superseded by the statutory provisions of said Section 72. See: Mandel Bros., Inc. v. Chicago Tunnel Terminal Co., 2 Ill2d 205, 117 NE2d 774; Burke v. Illinois Bell Tel. Co., 348 Ill App 529, 109 NE2d 358; American Generator & Armature Co., Inc. v. Commonwealth Edison Co., 298 Ill App 192, 18 NE2d 735; Medusa Portland Cement Co. v. Illinois Cent. R. Co., 287 Ill App 549, 5 NE2d 782; and, Des Plaines Lumber & Coal Co. v. C. B. and Q. R. Co., 249 Ill App 383.

It is thus clear to us that said Section 72 provides the exclusive remedy in this state for securing a refund, and bars common law actions such as was instituted under Count II of the Complaint herein.

█ As a defense to Count III, an action under Section 73 of the Public Utilities Act, wherein plaintiffs asked for a refund in the same amount as Count II and in addition demanded exemplary damages, the defendants rely upon Medusa Portland Cement Co. v. Illinois Cent. R. Co., 287 Ill App 549, 5 NE2d 782. In that case the Court held, consistently with the cases above cited, that Section 72 provided the exclusive remedy for obtaining a refund. The court, in disposing of the argument that Section 73 of the Public Utilities Act afforded an additional remedy to Section 72, said at page 564 of 287 Ill App, at page 788 of 5 NE2d:

"Sec. 72 is complete in and of itself. It was unnecessary for plaintiff to resort to any other section of the act for his procedure or for his remedy. It provides for the procedure to be followed both before the commission and the courts in respect to complaints for reparation. In our opinion, the public utilities act does not contemplate that in a claim for reparation for excessive rates charged by public utilities, a plaintiff may piece together his rights from various sections of the statute when sec. 72 of the act alone deals completely and specifically with reparation claims. The rule is that where there is to be found in a statute a particular enactment, it is to be held operative as against general provisions on the subject, either in the same act or in the general laws relative thereto . . ."

With this statement we agree, and we hold that no refunds are collectible under Count III of this complaint.

■ The court went on under Count III to find that the "act of the Alton Water Company in continuing to charge the 147½% rates for water service from and after April 4, 1960, the date on which the Supreme Court mandate was filed with this Circuit Court, was wilful under Section 73 of the Illinois Public Utilities Act." This finding was based upon that portion of said Section 73 which provides that whenever a public utility does anything which is prohibited, forbidden or unlawful, and the court finds that such act was wilful, it may award additional damages "for the sake of example and by the way of punishment."

The finding of wilfulness by the Court appears to rest upon a statement of the company's president that he decided against changing the rates after the Su-

preme Court order; that this decision was deliberately made after conferring with counsel; that the company should have known that the 147½% rates were unlawful; and that this decision to continue such rates was obviously not made through honest mistake nor inadvertence. The company, in return, points out that the president acted only after considerable deliberation with counsel; that counsel's advice was based upon what was honestly thought to be sound and valid legal conclusions; and that promptly after the entry of the Commission's remand order, the company offered to refund what it thought were the excess charges collected.

There are no authorities cited which bear directly upon the point here involved. We could go on at great length to analyze the many cases from other jurisdictions and decided under other statutes which might be relevant. But such would add little to the law and would unduly extend this already lengthy opinion. Suffice it to say that we have very carefully examined the abstract on this point and are unable to agree with the trial judge's finding that the activity of the defendant here should bring into play an award "for the sake of example and by the way of punishment." The fact that the 147½% rate was continued does not, in our judgment, of itself, establish the "wilfulness" we feel the statute intends to militate against. The fact that the defendant acted with expediency after the remand to the Commission in the redocketing of the case and in an effort to establish a proper rate indicates to us that the finding of wilfulness should be set aside.

■ One further point needs decision. That is the question of what interest should be assessed against defendant under Count I. Although the bond did not specifically provide that interest be payable, Section 2 of Chapter 74, Illinois Revised Statutes, provides that "Creditors shall be allowed to receive at the rate

of 5 per centum per annum for all monies after they become due on any bond, etc." Moreover, the defendant admits that some interest is probably due and only disputes the date from which it should start to accrue.

The statute provides that interest is collectible after monies become due. The bond was due and payable when the mandate of the Supreme Court affirming the original order of the Circuit Court was filed with the Circuit Court on April 4, 1960. Accordingly, we hold that defendants are liable for interest at the rate of 5% per annum from that date upon the amount found to be due under Count I of the complaint.

The decree appealed from is reversed and the cause remanded for the entry of a new decree in accordance with views expressed in this opinion.

Reversed and remanded.

SCHEINEMAN, PJ and CULBERTSON, J, concur.