INDEPENDENT VOTERS OF ILLINOIS, Appellant, v. ILLINOIS COMMERCE COMMISSION, Respondent-Appellee (Illinois Bell Telephone Company, Intervenor-Appellee).

Second District   No. 84—0892

Opinion filed November 21, 1985.

Robert M. Weissbourt, James G. Bradtke, and Aram A. Hartunian, all of Hartunian, Futterman & Howard, Chartered, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos and David L. Nixon, Assistant Attorneys General, of Chicago, of counsel), for appellee Illinois Commerce Commission.

Thomas P. Hester and Michael J. Karson, both of Chicago, for appellee Illinois Bell Telephone Company.

JUSTICE REINHARD delivered the opinion of the court:

The Independent Voters of Illinois (hereinafter IVI) appeals pursuant to section 68 of the Public Utilities Act (Ill. Rev. Stat. 1983, ch.

111²/₃, par. 72) from the order of the circuit court of Kane County affirming the Illinois Commerce Commission's order that Illinois Bell Telephone Company customers were not entitled to reparations pursuant to section 72 of the Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 76) for the rates charged by Illinois Bell Telephone Company (hereinafter Illinois Bell) between August 11, 1972, and December 31, 1973.

The issues on appeal, as raised and presented by IVI, are whether, under the theory of restitution, customers of a public utility are entitled to refunds for excessive charges paid on utility rates subsequently deemed improper by the supreme court; and alternatively, whether these customers are entitled to refunds for the excessive charges collected after the date of the decision which held the rate improper.

On September 23, 1971, Illinois Bell filed proposed tariff schedules with the Illinois Commerce Commission (hereinafter Commission) pursuant to section 36 of the Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111²/₃, par. 36) in order to increase the rates of Illinois Bell's customers. After extended hearings under docket No. 56831, the Commission ordered a general rate increase for Illinois Bell effective August 11, 1972. The circuit court affirmed the Commission's order and an appeal was taken directly to the Illinois Supreme Court pursuant to Supreme Court Rule 302(b) (87 Ill. 2d R. 302(b)).

On appeal in *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill. 2d 461, 303 N.E.2d 364, the Commission's findings as to what the general rate increase of Illinois Bell should be were challenged by Illinois Bell as being too low and by IVI and other interested parties as being too high. The supreme court reversed the Commission's order on October 1, 1973. It determined that while the Commission used the proper method of calculating the general rates, it improperly allowed certain operating expenses to be considered in fixing the rates. Specifically, the court found that lobbying expenditures, charitable contributions, expenditures for dues to civic, social and athletic clubs, the annual licensing fee paid to AT & T, in amounts in excess of expenditures that would otherwise properly be made by Illinois Bell, and, any sum paid to Western Electric which would yield Western Electric a return in excess of the rate of return allowed Illinois Bell should be excluded from the Commission's calculations when fixing a rate increase. (55 Ill. 2d 461, 479-85, 303 N.E.2d 364.) The court remanded the cause to the circuit court with directions to remand it to the Commission for further proceedings consistent with its opinion. (55 Ill. 2d 461, 486, 303 N.E.2d 364.) The court denied a re-

hearing on November 25, 1973, and its mandate was issued to the circuit court on December 10, 1973. The circuit court, pursuant to the supreme court decision, remanded the cause to the Commission on February 15, 1974.

While the rate increase in docket No. 56831 was being appealed, Illinois Bell petitioned the Commission on November 21, 1972, for another general rate increase. The Commission held hearings on this petition in October 1973 under docket No. 58033. Pursuant to the earlier *Illinois Bell Telephone* decision, the Commission excluded the expenditures disapproved by the supreme court from the new rate increase calculations. In a lengthy order, the Commission, *inter alia*, determined that the rates in effect were unjust and unreasonable, and set new rates. This order, entered on December 21, 1973, replaced the rates set in docket No. 56831 and became effective January 1, 1974. IVI participated in these hearings.

On March 26, 1975, the Commission reopened docket No. 56831 pursuant to the circuit court order requiring further proceedings consistent with the supreme court decision. On June 18, 1975, Illinois Bell filed a motion to dismiss pursuant to the decision in *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 117 N.E.2d 774, arguing that because the supreme court did not find the rates excessive, no action for reparations could be maintained. Further, it asserted that as the Commission implemented the court's order at the earliest practical time, the cause should be dismissed.

On July 28, 1975, IVI filed its response in opposition to the motion to dismiss, contending that while the *Mandel Brothers* decision prevents reparations from being collected from Illinois Bell for the period of time prior to the supreme court's order, Illinois Bell must still pay reparations for the improper charges leveled against its customers from December 10, 1973, until December 31, 1973.

Illinois Bell responded that the supreme court's order did not find the rates improper and that any claim is barred by the one-year period of limitations set forth in section 72 of the Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111⅔, par. 76). IVI then filed supplementary memoranda asserting that Illinois Bell was unjustly enriched for improper rates charged from August 11, 1972, until January 1, 1974, and should be required to make restitution. IVI also asked, alternatively, that reparations be paid for improper charges from the date of the supreme court decision on October 1, 1973.

The cause was continued from time to time until the Commission entered an order on November 17, 1982, determining that the supreme court decision had been obeyed, that the changes ordered by

the supreme court had been implemented, that pursuant to *Mandel Brothers*, no reparations should be allowed for the rates charged during the effective period of docket No. 56831, and that because the order of the supreme court was implemented in a timely manner, no reparations should be allowed for the period of time between the supreme court's order and the effective date of the new rate increase on January 1, 1974, in docket No. 58033. The cause was dismissed. On December 3, 1982, IVI filed a motion for rehearing which was denied by the Commission. On appeal, the circuit court, after considering the arguments and briefs of the parties, affirmed the Commission's order.

■ The issues raised in this appeal by IVI concern whether Illinois Bell's customers are entitled to refunds for the alleged excessive rates which were charged. Before we consider IVI's issues, however, we must first address an issue raised by the Commission in its brief. It asserts that IVI cannot seek a refund because it failed to file a claim for reparations within the one-year limitation required by section 72 of the Public Utilities Act (Ill. Rev. Stat. 1973, ch. 111⅔, par. 76). It appears from the record that this argument was presented to both the Commission and the circuit court by Illinois Bell; however, Illinois Bell never requested a ruling on this issue from either the Commission or the lower court, and neither made a ruling on the issue. This failure to obtain a ruling on an issue presented to a lower court waived the issue on appeal. (*Feldscher v. E & B, Inc.* (1983), 95 Ill. 2d 360, 365-66, 447 N.E.2d 1331; see also *People v. Caballero* (1984), 102 Ill. 2d 23, 38, 464 N.E.2d 223.) In any event, our resolution of the issues raised by IVI makes it unnecessary to consider the asserted bar of limitations.

IVI first contends that because the supreme court decision overturned the Commission's order in docket No. 56831, Illinois Bell must refund the excessive charges it collected during the effective period of the order, August 11, 1972, until January 1, 1974, asserting that the principles of restitution under Illinois law require that Illinois Bell issue refunds to its customers. It argues that while *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 117 N.E.2d 774, prohibits statutory reparations in this case, it does not prohibit restitution under equitable principles. Alternatively, it argues *Mandel Brothers* is no longer good law because the pronounced recent trend in other States is to correct errors contained in utility rates and pass on the benefits of these corrections to the utility's customers. IVI relies on a number of other State's decisions which require utilities to refund excess charges to its customers. We reject IVI's arguments.

■■ In Illinois, the common law right to recover reparations for

unreasonable charges by a public utility has been superseded by section 72 of the Public Utilities Act. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 76; *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 208, 117 N.E.2d 774.) Section 72 is the exclusive remedy provided for securing a refund. (*Cummings v. Commonwealth Edison Co.* (1965), 64 Ill. App 2d 320, 325, 213 N.E.2d 18.) Further, as determined in. *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 117 N.E.2d 774, public utility rates cannot be termed "excessive" for the purpose of awarding customers reparations even if those rates are later set aside upon judicial review if the rates were ordered by the Commission. (*Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 209, 117 N.E.2d 774.) This is because public utility rate setting is a legislative decision on behalf of the public. The rates are set by the Commission, not the utility, and the utility is required to follow the order. (See *Central Illinois Public Service Co. v. Illinois Commerce Com.* (1955), 5 Ill. 2d 195, 207, 125 N.E.2d 269.) Failure to do so would subject a utility to severe penalties. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 80.) If we were to order this utility to refund rates collected pursuant to a Commission order, we would, in essence, be legislating retroactive rates, an action directly prohibited by *Mandel Brothers.*

Thus, we believe *Mandel Brothers* controls; and a request for a refund under the theory of restitution is the same as a request for reparations which is prohibited under these circumstances by *Mandel Brothers.*

■ IVI also claims that *Mandel Brothers* must be reexamined in light of broader public policy considerations and, based upon several contrary decisions from other jurisdictions, should be interpreted very narrowly or considered no longer good law. We find this argument unpersuasive. While IVI cites several decisions in other jurisdictions in which the courts have allowed customers of public utilities to recover refunds for excessive rates charged, these cases are clearly distinguishable because the recovery is based upon statutes which permit a court not only to reverse a Commission order but also to pass on any economic benefit to the utility customers. (See, *e.g., Mountain States Telephone & Telegraph Co. v. Arizona Corporation Com.* (1979), 124 Ariz. 433, 604 P.2d 1144; *Mountain States Telephone & Telegraph Co. v. Public Utilities Com.* (1972), 180 Colo. 74, 502 P.2d 945; *Appeal of Granite State Electric Co.* (1980), 120 N.H. 536, 421 A.2d 121; *Pennwalt Corp. v Michigan Public Service Com.* (1981), 109 Mich. App. 542, 311 N.W.2d 423.) These statutes differ greatly from the Illinois statutory scheme and no authority has been cited by IVI which would

indicate to us that our supreme court has changed its approach as set forth in *Mandel Brothers.*

■ We conclude that *Mandel Brothers* is still effective and controlling law under our statutes in situations where customers seek refunds for the rates charged by a public utility pursuant to a Commission's order but judicially overruled. Because the statute provides for reparations as the exclusive remedy in this case, the equitable remedy of restitution asserted by IVI is prohibited. See *Dvorkin v. Illinois Bell Telephone Co.* (1975), 34 Ill. App. 3d 448, 452-53, 340 N.E.2d 98.

IVI also contends that if *Mandel Brothers* precludes a restitutional remedy, then the remedy provided by the Public Utilities Act is inadequate so as to deprive Illinois Bell's customers of due process and equal protection. It reasons for the first time on appeal that because the only available means to avoid paying excessive rates is to post a bond to effect a stay of a Commission's order, this bond requirement economically precludes both not-for-profit groups and the poor from receiving any remedy for excessive public utility rates.

Illinois Bell and the Commission respond that IVI has waived any constitutional challenge to the statute by failing to raise it in its petition for rehearing as prescribed by section 68. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 72.) In addition, they argue that IVI is requesting this court to rule on an abstract question of law because IVI never requested a stay of the Commission's order pending the outcome of the appeal. Finally, they assert that the *Mandel Brothers* decision and the Public Utilities Act itself are both constitutionally sound.

■ While a reviewing court is empowered to consider whether the Commission's actions infringe upon any constitutional rights (*Cerro Copper Products v. Illinois Commerce Com.* (1980), 83 Ill. 2d 364, 370-71, 415 N.E.2d 345), any appeal from a Commission's order is purely statutory (*People v. Illinois Commerce Com.* (1983), 114 Ill. App. 3d 384, 386, 448 N.E.2d 986), and the statute requires that an issue not raised before the Commission in a petition for rehearing is waived. (*Iowa RCO Association v. Illinois Commerce Com.* (1980), 86 Ill. App. 3d 1116, 1120, 409 N.E.2d 77.) IVI states in its reply brief that it has never sought a ruling on the constitutionality of the Public Utilities Act. Instead, IVI states that "[t]he point is that since it must be presumed that the legislature did not intend to pass an unconstitutional statutory scheme *** , a means of recovery in the instant case should be inferred." Thus, although it appears that IVI is not now raising a separate constitutional challenge, any such contention would be waived by not properly preserving the issue under the statute.

IVI's second issue raised on appeal is that refunds should be pro-

vided to Illinois Bell customers for rates collected after the decision of supreme court on October 1, 1973, until the new rates were effective on January 1, 1974. IVI contends, and we agree, that *Mandel Brothers* did not directly address the effect a reversal of a Commission order has on the utility rates being charged pursuant to that order. IVI argues that in order for the mandate of the supreme court to have any meaning, the Commission's order in docket No. 56831 must be considered abrogated, returning the utility rates to the amount which was in effect prior to the reversed order's effectiveness. Illinois Bell and the Commission respond that although the order was reversed, the legislative scheme of avoiding judicial rate-making requires that the order remain in effect until the Commission acts upon the order. They argue that since a utility cannot charge a rate without the Commission's approval, the utility must follow the Commission's order, whether reversed or not, until a new order is issued.

In Illinois, there has been no decision directly determining what effect a reviewing court's reversal of a Commission's order has on existing public utility rates. Our statutes do not specifically prescribe the effect upon existing rates of a court's reversal of a Commission's order setting rates. While our supreme court once stated that the circuit court did not have the authority to order that the former rates of a utility be restored after it set aside a Commission order setting a new rate, this statement was made in the context of a decision concerning the authority of a reviewing court and not a decision concerning the effect of a reversal of a Commission's order. (*Illinois Commerce Com. v. Chicago & Eastern Illinois Ry. Co.* (1928), 332 Ill. 243, 250, 163 N.E. 664.) There appears to be a split of authority in other jurisdictions. IVI asserts that the view of *City of Los Angeles v. Public Utilities Com.* (1972), 7 Cal. 3d 331, 497 P.2d 785, 102 Cal. Rptr. 313, which held that a court's reversal of a Commission's order nullifies a rate immediately causing the prior rates to take effect, should be adopted. On the other hand, Illinois Bell and the Commission assert that the holding in *Cleveland Electric Illuminating Co. v. Public Utilities Com.* (1976), 46 Ohio St. 2d 105, 346 N.E.2d 778, which decided that, upon reversal, a public utility's rates remain in effect until the Commission can redetermine the rates on remand, should be followed.

■ Public utility rate fixing is a legislative function which has been delegated to the Commission, not the judiciary (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973), 55 Ill. 2d 461, 469-70, 303 N.E.2d 364), because the setting of just and reasonable rates should be by sound business judgments rather than by legal formulas.

(*Produce Terminal Corp. v. Illinois Commerce Com.* (1953), 414 Ill. 582, 590, 112 N.E.2d 141.) Considering this rationale, we are of the opinion that the approach taken by the Ohio court under statutes similar to this State's is the correct one, and the result is more in keeping with the Illinois' legislative scheme. See generally Poor, *Utility Rates Pending Judicial Review: A Riddle Wrapped in a Mystery in Illinois*, 17 J. Mar. L. Rev. 743 (1984).

■ This approach allows a public utility to properly charge rates in reliance upon a Commission order until replaced by a further order of the Commission. If the effect of a reversal of a Commission order setting rates was to reinstate the rate charged before the order complained of, the practical effect would be to reinstate an old rate which the Commission presumedly found unreasonable. We believe that the reversal and remand of the order of the Commission here does not change the rate, but is a mandate to the Commission to issue a new order. The rate in the reversed order remains in effect until the Commission acts on the court's mandate and issues a new order. This provides for an orderly transition from one rate to another.

IVI asserts that this approach will destroy any authority which is usually carried in a supreme court decision and, in essence, will allow the Commission to set rates without any checks upon its actions potentially creating unjust rates for the utility customers. It is not for this court to speculate as to what could happen. (*Cf. Dvorkin v. Illinois Bell Telephone Co.* (1975), 34 Ill. App. 3d 448, 457, 340 N.E.2d 98.) What did in fact happen was that the Commission applied the supreme court's decision concerning rate calculations even before it was mandated to do so. Further, docket No. 56831 rates were replaced by docket No. 58033 rates in less than one month after issuance of mandate from the supreme court. Although IVI speculates that the Commission, by taking no action, could ignore the supreme court for as long as it takes and Illinois Bell "could go on reaping excess profits *ad infinitum*," that is not the factual situation before us, and we decline to consider this abstract argument.

For the foregoing reasons, the decision of the circuit court of Kane County which affirmed the order of the Illinois Commerce Commission is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.