CHARLES L. PELLEY, *et al.,* Plaintiffs- Appellants, v. ILLINOIS MUNICIPAL WATER COMPANY, Defendant-Appellee (The Village of Clarendon Hills, Defendant).

Second District   No. 85—0171

Opinion filed April 1, 1986.—Rehearing denied May 16, 1986.

Arthur G. Jaros, Jr., of Richter & Jaros, of Oak Brook, for appellants.

Alfred E. Woodward, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiffs appeal from orders of the circuit court of Du Page County dismissing their second amended complaint; denying leave to file a third amended complaint; denying a motion to strike an affidavit; and denying a petition for partial relief from stipulation. We affirm.

Illinois Municipal Water Company (the Water Company), which then supplied water to the residents of the Blackhawk Heights Subdivision (the subdivision) of the village of Clarendon Hills (the village), sharply increased its rates in early 1983. In November 1983 the village agreed to buy the water utility system supplying the subdivision from the Water Company for $150,000. Two lawsuits, later consolidated because they presented identical issues, were filed naming the Water Company and the village as defendants. The first complaint, filed November 29, 1983, named Charles L. and Josephine C. Pelley as individual plaintiffs and Charles L. Pelley as class representative of the real property owners of the subdivision. The second complaint filed December 6, 1983, named Claire R. Jaros as an individual plaintiff and Josephine C. Pelley as class representative of the real property owners of the subdivision. Plaintiffs alleged that much of what the Water Company was selling, specifically the water mains throughout the subdivision, was already owned by the village. They requested that the sale be completed; that the $150,000 be placed in escrow during the pendency of the litigation; that the court declare the village the owner of the water mains; that if the Water Company prevailed, the Water Company receive the entire escrowed amount including interest; but that if plaintiffs prevailed, the sale be permanently en-

joined with the Water Company receiving an amount for rental during the litigation and the village receiving the balance of the escrowed amount. These complaints were dismissed, and plaintiffs filed first amended complaints on December 14, 1983, which continued to assert that the Water Company did not own most of the water distribution system, but asked for declaratory relief so that plaintiffs could obtain reparations for excessive rates charged by the Water Company in a proceeding initiated that day before the Illinois Commerce Commission (the ICC).

Stipulations were signed by plaintiffs and their attorney with the village on December 22, 1983, and were filed on December 27, 1983. The stipulations were in essence settlements of the actions against the village. Plaintiffs agreed not to seek to rescind or otherwise challenge the validity of the agreement selling the water system to the village and to the voluntary dismissal of the actions "with prejudice to the rights of the plaintiffs in reference to the Village" but without "prejudice insofar as the defendant Illinois Municipal Water Company is concerned." The order dismissing the action could be vacated if the sale did not close on or before January 15. The action was dismissed pursuant to the stipulation on December 27, 1983; the sale of the water system was completed on December 28, 1983; the order of dismissal was vacated as to the Water Company on January 19, 1984; and plaintiffs moved for partial relief from the stipulation with the village on January 26, 1984. This last motion was subsequently denied.

The Water Company moved to dismiss the first amended complaint. Plaintiffs moved to strike an affidavit supporting the motion to dismiss. The affidavit was stricken in part; however, the court also struck the first amended complaint.

Plaintiffs filed a four-count second amended complaint. Three of the counts were variations of a single basic claim. Plaintiffs alleged they were entitled to a declaratory judgment that the water mains had been owned by the village so that they could obtain reparations from the Water Company for excessive rates in the pending ICC proceeding. (See Ill. Rev. Stat. 1983, ch. 111⅔, par. 76.) The theory was that, if the Water Company had not owned the mains, the ICC-set rates had been excessive because they had reflected a return to the Water Company on the value of assets it had not owned. The remaining count of the second amended complaint was a taxpayer's representative action brought by plaintiff Claire R. Jaros on behalf of the village against the Water Company claiming rent for use of the village's water mains from January 13, 1953, to the date of the sale of the water system. The second amended complaint was dismissed.

Plaintiffs moved to vacate the order of dismissal and for leave to file a third amended complaint. The proposed third amended complaint would have been substantially the same as the second amended complaint except for the addition of a fifth count. This count would have been a taxpayers' representative action by plaintiffs Charles L. Pelley, Josephine C. Pelley, and Claire R. Jaros on behalf of the village against the Water Company seeking "equitable restitution" of a part of the price paid for the water system because the village had already owned most of it. Plaintiffs expressly stated that in this claim they were not seeking to have the contract declared invalid or rescinded. The circuit court refused to vacate its order dismissing the second amended complaint and denied leave to file the third amended complaint. This appeal followed.

■■ Three counts of both the second amended complaint and the proposed third amended complaint sought a declaratory judgment so that plaintiffs could obtain reparations in the proceeding before the ICC. The basis on which reparations were claimed was that the ICC-set rates had been excessive due to the treatment of the water mains as property of the Water Company. The law, however, is clearly contrary to plaintiffs' claim. An ICC-approved rate cannot be termed excessive for the purpose of awarding reparations. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 76; *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 209; *City of Chicago v. Illinois Commerce Com.* (1985), 133 Ill. App. 3d 435, 449, 478 N.E.2d 1369, 1379.) Plaintiffs argue that *Mandel* held only that a court may not order reparations on the basis that an ICC-approved rate was excessive but that the ICC may award reparations on that basis. *Mandel's* holding was much more fundamental.

> "[T]he rate approved by the Commerce Commission as just and reasonable was the rate which the utility was required to charge so long as the order of the commission remained in effect. It cannot therefore be said that in charging that rate the utility charged an excessive rate which gave rise to a claim for reparations." (*Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 211-12.)

This holding, delivered in a case which involved review of the ICC's denial of a claim for reparations, applies to ICC proceedings as well as court proceedings. See *Independent Voters v. Illinois Commerce Com.* (1985), 139 Ill. App. 3d 957, 487 N.E.2d 963 (circuit court properly affirmed ICC's *Mandel*-based denial of reparations); see also *Alton Brick Co. v. Alton Water Co.* (1963), 42 Ill. App. 2d 451, 461, 192 N.E.2d 599, 604 (rates cannot be fixed retroactively by the ICC).

■ Plaintiffs also argue that the statutory provision giving the ICC the authority to rescind its orders provides a separate basis for the ICC to grant reparations. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 71.) That section does not authorize the ICC to order reparations. The exclusive remedy for obtaining a refund is provided in the section of the statute authorizing the ICC to order reparations (Ill. Rev. Stat. 1983, ch. 111⅔, par. 76; *Alton Brick Co. v. Alton Water Co.* (1963), 42 Ill. App. 2d 451, 465, 192 N.E.2d 599, 605-06; see also *Independent Voters v. Illinois Commerce Com.* (1985) 139 Ill. App. 3d 957, 962, 487 N.E.2d 963, 967 (request for refund under restitution theory is same as a request for reparations)), and, as has already been noted, that section does not authorize reparations on the basis that an ICC-set rate was excessive.

■ It is thus apparent that plaintiffs could not obtain reparations on the basis alleged. The counts of plaintiffs' second amended complaint and proposed third amended complaint requesting a declaratory judgment in order to subsequently obtain reparations therefore do not allege the existence of an actual controversy but rather ask that judgment be passed on an abstract proposition of law. (See Ill. Rev. Stat. 1983, ch. 110, par. 2—701; *Clyde Savings & Loan Association v. May Department Stores* (1981), 100 Ill. App. 3d 189, 192, 426 N.E.2d 955, 958.) Plaintiffs were therefore not entitled to a declaratory judgment.

■ The counts of the second amended complaint and the proposed third amended complaint claiming rent for use of the water mains and the count of the proposed third amended complaint seeking restitution of a portion of the price paid for the mains were taxpayers' representative claims made by individual plaintiff-taxpayers on behalf of the village. The interests of the village provided the whole bases for these claims. (See *Feen v. Ray* (1985), 109 Ill. 2d 339, 344-45.) The village was therefore an indispensable party with respect to these claims. (109 Ill. 2d 339, 345-46.) However, plaintiffs stipulated to the dismissal of the village from this action with prejudice. It matters not that the village was once a party defendant or that the claims are brought on behalf of the village. (See *Feen v. Ray* (1985), 109 Ill. 2d 339.) The village, having been dismissed from the action with prejudice, is no longer a party, and the counts of the second amended complaint and the proposed third amended complaint making claims on behalf of the village could not be adjudicated because of the absence of the village, an indispensable party with respect to these claims. 109 Ill. 2d 339.

Thus, entering a declaratory judgment would have required the court to pass on an abstract proposition of law, and adjudicating the

claims brought on behalf of the village was impossible because of the absence of an indispensable party. The trial court therefore did not err in dismissing the second amended complaint and in denying leave to file the third amended complaint. Because it is unnecessary to our disposition of this appeal, we do not address issues raised by plaintiffs with respect to the denial of their motion to strike an affidavit or the denial of their petition for partial relief from stipulation.

The judgment of the circuit court of Du Page County is accordingly affirmed.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.